Hillsborough-northern judicial district
No. 2009-467

AKWA VISTA, LLC

v.

NRT, INC. d/b/a COLDWELL BANKER RESIDENTIAL BROKERAGE & a.

Argued: May 13, 2010
Opinion Issued: July 23, 2010

*Cleveland, Waters and Bass, P.A.*, of Concord (*William B. Pribis* on the brief and orally), for the plaintiff.

*Preti, Flaherty, Beliveau & Pachios, PLLP*, of Concord (*Peter G. Callaghan* on the brief and orally), for the defendants.

DALIANIS, J. The defendants, NRT, Inc. d/b/a Coldwell Banker Residential Brokerage (Coldwell Banker) and Frank C. Schoenthaler, appeal the Superior Court's (*Smukler*, J.) denial of their motion for judgment notwithstanding verdict (JNOV) and remittitur upon the jury verdict against them for breach of contract and negligent misrepresentation and upon the jury verdict against them for their counterclaims against the plaintiff, Akwa Vista, LLC. We affirm.

The jury could have found the following facts. In 2002 and 2003, Akwa Vista, a real estate developer, sought to develop a 400-acre parcel on Lake Winnipesaukee. In 2003, Schoenthaler, a Coldwell Banker real estate agent, approached Richard Mailloux, the owner of Akwa Vista, at a planning board meeting and told him that Coldwell Banker wanted the exclusive right to sell the lots of the subdivision Akwa Vista planned to create on the 400-acre parcel. Schoenthaler stated that Coldwell Banker was "a national company" that did "millions of dollars worth of volume per day," and that he "would spend [$]1,080,000 to market the property." He also told Mailloux that he "had tons of builders that he constantly did business with." Of these builders, Schoenthaler represented that there were four to six who would purchase twenty-six lots for a minimum of $4 million. Schoenthaler told Mailloux that he could deliver the builder-buyers as soon as Mailloux's purchase of the property closed in early April 2004.

The parties then executed a written contract entitled "EXCLUSIVE RIGHT TO SELL AGREEMENT" (Agreement). This agreement, dated and signed on March 4, 2004, by Mailloux for Akwa Vista and Schoenthaler for Coldwell Banker, stated, in pertinent part:

> Whereas [Coldwell Banker] has secured four (4) to six (6) home builders who are committed to purchasing twenty-six (26) residential building lots from [Akwa Vista] at an aggregate price of $4,000,000, [Akwa Vista], in recognition of [Coldwell Banker's] efforts as herein before described, has agreed to list the sale exclusively with [Coldwell Banker] the 163 residential building lots in Akwa Vista Subdivision . . . , excluding the eight (8) building lots reserved for the Mailloux family . . . on the terms and conditions hereinafter set forth.

Shortly after the parties signed the agreement, Akwa Vista closed on the property. Schoenthaler, however, failed to deliver any buyers for the subdivision. When asked repeatedly about the promised buyers, Schoenthaler consistently assured Akwa Vista of their existence, but gave different explanations for his failure to produce them.

Akwa Vista sued Schoenthaler and Coldwell Banker, alleging, among other things, breach of contract and negligent misrepresentation. The

defendants brought similar counterclaims against Akwa Vista. Following a four-day trial, the jury returned a verdict in Akwa Vista's favor and against the defendants on their counterclaims, awarding Akwa Vista $850,000. The trial court denied the defendants' motion for JNOV and remittitur.

On appeal, the defendants argue that the trial court erred when it denied their motion for JNOV because: (1) no reasonable jury could conclude that there was a breach of contract resulting in damages to Akwa Vista; (2) Akwa Vista failed to prove the elements of negligent misrepresentation; and (3) the jury verdict in favor of Akwa Vista on the defendants' counterclaims was against the weight of the evidence. They argue that the trial court erred in denying their motion for remittitur because the damages awarded were speculative, manifestly exorbitant and against the weight of the evidence.

## I. JNOV

A motion for JNOV relates to the sufficiency of the evidence and presents a question of law. *Gowen v. Brothers*, 121 N.H. 377, 380 (1981). A party is entitled to JNOV only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the non-moving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. *See Boynton v. Figueroa*, 154 N.H. 592, 602 (2006). In deciding whether to grant the motion, the trial court cannot weigh the evidence or inquire into the credibility of witnesses. *Id.* If the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the court must deny the motion. *Id.* Our standard of review of a trial court's denial of a motion for JNOV is extremely narrow. *Blouin v. Sanborn*, 155 N.H. 704, 706 (2007). We will not overturn the trial court's decision absent an unsustainable exercise of discretion. *Id.*

### A. Breach of Contract

The defendants first argue that the language "Whereas [Coldwell Banker] has secured four (4) to six (6) home builders who are committed to purchasing twenty-six (26) residential building lots from [Akwa Vista] at an aggregate price of $4,000,000" was merely a recital and not part of the contract. Specifically, they urge us to adopt as law that "[r]ecitals in a contract, such as 'whereas' clauses, are merely explanations of the circum-stances surrounding the execution of the contract, and are not binding obligations unless referred to in the operative provisions of the contract." 17A C.J.S. *Contracts* § 317, at 340 (1999). Even if we were to do so, however, the defendants' argument still fails. The jury could have found that the

provisions of the whereas clause in this case are referred to throughout operative provisions of the contract, indicating that they were not merely explanations of the circumstances, but that the parties intended that they constitute binding obligations. For example, clause seven refers to Coldwell Banker's obligation to "produce a minimum of twenty-six (26) Lot sales at the commencement of this Agreement." Other parts of the whereas clause, including Akwa Vista's obligation "to list the sale exclusively with [Coldwell Banker]," are referred to in clauses two and four.

Alternatively, the defendants argue that they performed on the contract by producing the buyer-builders as promised. Even assuming the jury could have inferred from the evidence that this is true, there is ample evidence supporting the opposite conclusion. For example, the defendants contend that they did produce two buyers ready to purchase sufficient lots at a sufficient price, but that Akwa Vista did not accept the buyers' offers. Representatives from these purported buyers, however, testified at trial that they had not actually signed any offer to purchase lots from Akwa Vista. In addition, the evidence showed that the lots which these builders were allegedly going to purchase were never specified and Mailloux never met the builders, despite his repeated requests to Schoenthaler to do so. As noted above, we must view the evidence in the light most favorable to the non-moving party. *See Figueroa*, 154 N.H. at 602. The conflicting evidence cited by the defendants fails to meet their burden of establishing that the trial court unsustainably exercised its discretion. *See Guyotte v. O'Neill*, 157 N.H. 616, 622 (2008) (jury is free to accept or reject conflicting evidence and to determine the weight and credence to give evidence).

Next, the defendants contend that Akwa Vista failed to prove that it suffered any harm caused by the alleged breach. However, the record reveals sufficient evidence upon which a verdict in favor of Akwa Vista could stand. Akwa Vista presented evidence of the expenses it incurred as a result of its reliance upon the contract. Specifically, Mailloux testified that Akwa Vista had incurred carrying costs associated with its continued ownership of the twenty-six lots, that it had incurred interest costs associated with obtaining replacement financing, and that it had incurred a loss of value on the unsold lots.

The defendants next argue that Akwa Vista's election to affirm the contract precludes its claim of breach. Relying upon *Green v. Sumner Properties, LLC*, 152 N.H. 183, 184-85 (2005), the defendants argue that Akwa Vista's continued participation in the contract means that it cannot both retain its benefits and sue for breach. The defendants' application of *Green* to the facts of this case, however, is incorrect.

■ In *Green*, a landlord induced a tenant and the tenant's prospective roommate to rent a two-bedroom apartment, but when they arrived to move in, there was a stranger occupying one of the bedrooms. *Green*, 152 N.H. at 183. The tenant and his roommate stayed, sharing the remaining bedroom, and the tenant sued for misrepresentation, seeking to recover half the amount of rent paid under the lease. *Id.* at 184. The landlord argued that, by staying in the apartment, the tenant had ratified the lease and, therefore, he could not sue under its terms. *Id.* We rejected this argument, stating:

> While ratification may deprive a party of contractual remedies, it does not deprive the party of tort remedies. A party entering into an agreement in reliance upon a misrepresentation of a material fact has two choices. He may justifiably elect to rescind or disaffirm the agreement and refuse to proceed further with the transaction, or he may elect to affirm the contract, keep its benefits, perform his obligations thereunder, and sue for damages for misrepresentation. Thus, even if we assume that the tenant ratified the lease, he was still entitled to seek tort damages for the landlord's misrepresentation.

*Green*, 152 N.H. at 184-85 (quotations, citations and brackets omitted).

■ Here, the record indicates that Akwa Vista neither rescinded nor affirmed the contract, but continued to ask Schoenthaler about the status of the promised builder-buyers, and was repeatedly assured that the buyers were available and ready to purchase. When pressed by Akwa Vista to meet with the buyers, Schoenthaler consistently reassured Akwa Vista that it would be able to do so soon, but then presented various excuses why the meetings were not occurring. The defendants argue that these facts support that Akwa Vista continued with the contract and retained its benefits in spite of the defendants' breach. However, the jury could reasonably have found, based upon these same facts, that Akwa Vista was not acquiescing in the defendants' failure to deliver buyers, but that it was simply providing the defendants with more time, based upon Schoenthaler's reassurances, to perform as promised. Accordingly, *Green's* limitation upon a plaintiff's remedies does not apply here.

■ The defendants also argue that the contract violated the statute of frauds. We agree with Akwa Vista, however, that this argument was not preserved. The statute of frauds is an affirmative defense that must be timely raised. *See Blanchard v. Calderwood*, 110 N.H. 29, 33 (1969). Here, the defendants did not raise it in their special plea and brief statement of defenses, nor did they raise it at any other time before or during trial. *Cf.*

SUPER. CT. R. 28 (failure to plead affirmative defenses in special plea and brief statement constitutes waiver). Based upon all of the above, the defendants have failed to establish that the trial court erred in denying the defendants' motion for JNOV on Akwa Vista's breach of contract claim.

### B. Negligent Misrepresentation

■ The defendants next assert that the trial court erred by denying their motion for JNOV on Akwa Vista's negligent misrepresentation claim. To prevail, Akwa Vista was required to prove that the defendants made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause Akwa Vista to rely upon it and that Akwa Vista justifiably relied upon it. See Snierson v. Scruton, 145 N.H. 73, 77 (2000).

■ The defendants contend that Akwa Vista did not rely upon statements or representations made by defendant Schoenthaler regarding his promise to secure builders. There was, however, ample evidence to the contrary. Mailloux testified that he relied upon the defendants' representations in proceeding with his business in the manner that he did and in allocating his financing for aspects of the development. Another witness testified that "[w]e had every reason to believe that . . . [the builders] were coming . . . we had depended on it, and we needed them to come." She also testified that Akwa Vista had expected to receive $4 million from builders at the closing on its purchase of property, and that they had depended upon that money.

Alternatively, the defendants contend that Akwa Vista's reliance was not justifiable. We conclude, however, that a reasonable jury could have concluded otherwise. The record indicates that Schoenthaler repeatedly stated that he had a pool of builders from which to choose and that they were ready to go forward. Testimony established that, when Akwa Vista repeatedly asked why he had not delivered buyers, Schoenthaler repeatedly represented that he would, making statements such as, "They're there. . . . Oh, I'm on the phone with one right now. . . . [T]hey're ready." In addition, testimony showed that he also represented that some builders would be ready to pay in cash.

■ The defendants next contend that Akwa Vista failed to prove it suffered damages as a result of any alleged misrepresentation. We conclude that there is evidence in the record from which the jury could find that Akwa Vista suffered damages as a result of the defendants' misrepresentation. Specifically, Mailloux testified that had Akwa Vista received the $4 million at the closing, it would have been able to pay back a greater amount

of the money it had borrowed to finance the project, thereby saving it a substantial amount in interest payments.

To the extent that the defendants argue that if there was a misrepresentation, they rescinded it, we find that there is evidence in the record from which the jury reasonably could have concluded otherwise. Accordingly, the defendants have failed to establish that the trial court erred in denying the defendants' motion for JNOV on Akwa Vista's negligent misrepresentation claim.

### C. The Defendants' Counterclaims

The defendants argue that the trial court erred by denying their motion for JNOV on their counterclaims because the jury verdict was against the weight of the evidence. The defendants' counterclaims alleged: (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; (3) unfair and deceptive business practices; and (4) intentional or negligent misrepresentation. The defendants' particular arguments concerning their counterclaims all rest upon the contention that Akwa Vista was underfinanced. There is evidence in the record, however, from which the jury could conclude that Akwa Vista was not underfinanced and had resources available to it from which it could obtain additional financing. While the defendants point to evidence in the record they claim supports their contention, their arguments go to the weight and credibility of evidence, which are beyond the scope of what the trial court can review on a motion for JNOV. With the evidence viewed in the light most favorable to Akwa Vista, the defendants cannot meet their burden of establishing that the trial court unsustainably exercised its discretion in denying their motion.

### II. Remittitur

Finally, the defendants argue that the trial court erred when it denied their motion for remittitur because the damages awarded were speculative, manifestly exorbitant and against the weight of the evidence.

New Hampshire law does not require that damages be calculated with mathematical certainty, and the method used to compute them need not be more than an approximation. *Blouin*, 155 N.H. at 707. Whether remittitur should be granted is within the trial court's sound discretion. *Id.* Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively against the weight of the evidence. *Id.* The court may also order remittitur if the verdict is "manifestly exorbitant." *Id.* (quotation

omitted). The amount of a verdict is conclusively against the weight of the evidence only if no reasonable jury could have reached it. *Id.*

Once the trial court has reviewed the amount of the verdict under this standard, we will not disturb its finding unless no reasonable person could have made it. *Id.* Our task upon review is not to attempt to ascertain the one and only correct verdict. *Id.* Absent an unsustainable exercise of discretion, we will not reverse the trial court's decision. *Id.* The party seeking to modify the verdict bears a heavy burden. *Id.*

The jury was instructed on the issue of damages for all claims and counterclaims as follows:

> Your award must be based upon evidence and not upon speculation, guess, or conjecture. The purpose of any damages awarded is to put the party in the same position it would have been if the other party was not legally at fault. You should compare the position of the party as a result of the other party's legal fault to the position it would have been in had the other party not been at fault.

At trial, Akwa Vista presented evidence that it incurred expenses that it would not have incurred had the defendants not breached their contract to secure buyer-builders for $4 million in lot sales or had their representations regarding buyer-builders been true. Specifically, Mailloux testified that Akwa Vista had incurred carrying costs associated with its continued ownership of twenty-six lots totaling $722,000. He also testified that it had incurred interest costs associated with obtaining replacement financing totaling $125,000 and that it had incurred a loss of value on lots not sold totaling approximately $1 million.

In arguing that Akwa Vista did not establish that it actually paid the interest it claimed and that much of the damages awarded were due to Akwa Vista's own conduct and failure to mitigate, the defendants failed to meet their burden of proof. Although the defendants point to evidence tending to support these arguments, the jury was free to accept or reject conflicting evidence and to determine the weight and credence to give evidence in making its award. *O'Neill,* 157 N.H. at 622. From the evidence noted above, a reasonable juror could have reached the verdict awarded to Akwa Vista. Thus, the defendants have failed to establish that the verdict was conclusively against the weight of the evidence, and we cannot say that the trial court erred in denying the defendants' motion for remittitur.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.