**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case Nos. 2014-0454 and 2015-0501, <u>Bellevue Properties, Inc. v. Settlers' R1, Inc. & a.</u>, the court on January 12, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.  The plaintiff, Bellevue Properties, Inc. (Bellevue), appeals, and the defendants, Settlers' R1, Inc., Settlers' R2, Inc., Settlers' Tennis, Inc., Settlers' 1, LLC, Settlers' Green Associates, L.P., Settlers' Green Condo Associates, L.P.I., Settlers' Green, Inc., Settlers' Holding Company, Settlers' J, LLC, Settlers' Lot 12, Inc., and 13 Green Street Properties, LLC (collectively, Settlers), cross-appeal orders of the Superior Court (<u>Smukler</u>, J.) related to Bellevue's claims and Settlers' counterclaims, some of which were tried to a jury and others of which were decided by the court.

In its appeal, Bellevue argues that the trial court erred by:  (1) rejecting Bellevue's equitable claims for breach of easement duties and unjust enrichment; (2) granting a directed verdict to Settlers upon Bellevue's breach of fiduciary duty claim; (3) denying Bellevue's motion asking the trial court to set aside the verdict on Settlers' abuse of process counterclaim related to a February 2014 planning board decision and to direct a verdict in favor of Bellevue; (4) entering a directed verdict, and denying Bellevue's motion for judgment notwithstanding the verdict (JNOV), upon Bellevue's slander of title claim; and (5) denying Bellevue's motion for remittitur upon Settlers' breach of contract counterclaim.  In its cross-appeal, Settlers challenges the trial court's grant of Bellevue's motion to set aside the verdict and to direct a verdict in favor of Bellevue upon Settlers' abuse of process counterclaim related to Bellevue's initiation of the instant action and its concomitant decision that Settlers is not entitled to attorney's fees for that claim.  Settlers also argues that the trial court erred by denying it prevailing party attorney's fees because of Bellevue's alleged "bad faith."  We affirm.

I.  Relevant Facts

The parties own property in "Settlers' Green," a mixed-use development in North Conway that includes retail space, apartments that were once condominiums, the North Conway Grand Hotel, and a recreation complex.  Bellevue owns lots formerly known as Lots 1 and 2 (the Hotel Property).  The hotel is located on one lot and hotel parking is located on the other lot.  Bellevue has owned the Hotel Property since November 1999.

The original developer acquired and then subdivided the land that now comprises Settlers' Green in 1986. Many of the parties' claims in this case derive from an October 1986 declaration of easements (1986 Declaration), which: (1) identifies the roads to be constructed in Settlers' Green; (2) creates easements for the shared use of those roads as well as for shared use of lighting, landscaping, a water system, a septic system, drainage, and parking; and (3) allocates the costs for maintaining those facilities/systems.

Particularly at issue are provisions concerning the development's roads and parking. Section 1.0 of the 1986 Declaration governs the construction and maintenance of the development's roads. Section 1.1 obligates Settlers, as the successor to the original developer, to "construct Settlers' Green Drive, Common Court and the Fairway," which are roads shown on the 1986 subdivision plan "and any other roads [Settlers] deems necessary" to service the development. Section 1.2 requires Settlers to "use its best efforts to have the Town of Conway . . . accept the [private] roads" that service the development "as public ways." In the event that the Town of Conway does not accept the roads as public ways, Settlers has the right "to transfer its title, rights and obligations" with regard to those roads, in whole or in part, to the owner of Lots 3 and 4. Until the roads become public ways or title is transferred to the owner of Lots 3 and 4, Settlers is responsible for maintaining the private roads and has the right "to charge and collect from the owner of every lot a pro rata share on the basis of use of the expenses" of such maintenance.

Section 3.0 of the declaration governs parking. Under Section 3.0, Lot 1 is subject to an easement "in favor of Lots 2 through 6, 17 and 18 for the parking of vehicles of the owners, employees, guests and invitees of Lots 2 through 6 inclusive, 17 and 18." Section 3.3 gives Settlers the right "to allocate parking spaces" for the dominant estates (Lots 2-6, 17, and 18) and for the servient estate (Lot 1) "on the basis of the number of spaces required for each lot" pursuant to town ordinances or requirements or under contractual arrangements between the owners of those lots and Settlers. Section 3.2 makes Settlers responsible for maintaining "the parking lot" and allows Settlers to "charge and collect from the owners of . . . lots 1 through 6 inclusive, 17 and 18 a pro rata share determined on the basis of the number of parking spaces allocated" to those lots.

In the 1980's, Settlers constructed an outlet shopping mall on Lots 3 and 4, with approximately 90,000 square feet of retail space. At around that time, Bellevue's predecessor-in-title purchased Lots 1 and 2, building a hotel on one lot and parking facilities on the other. The deed to Bellevue's predecessor-in-title provided that the conveyance was subject to the 1986 Declaration. Pursuant to the 1986 Declaration, the owners of Lots 3 and 4 retained the right to share the parking facilities constructed on Lot 1.

2

The deed also provided that the conveyance was subject to another declaration of covenants "except to the extent modified by a certain Purchase and Sale Agreement for Lots 1 and 2 dated January 25, 1988 between [Settlers] and Robert Cowan, James Cough and Bernard Cough" (the 1988 P & S). The 1988 P & S provided, in pertinent part, that "Lot 1 contains the parking for lots other than Lot 1 and specifically, but not limited to 500 spaces for Lots 3 and 4." The 1988 P & S also provided that Settlers "is entitled to 500 spaces . . . constructed upon Lot 1."

Bellevue purchased Lots 1 and 2 in November 1999. Before doing so, Bellevue obtained a surveyor's report of the two lots. That report stated, in pertinent part, that the property "is subject to a Declaration of Easements . . . that allows roadway changes" and that "this Declaration has been used to relocate some of the roads that access the subject premises." The surveyor's report further stated that Lots 1 and 2 "share[ ] driveways, parking, and walking areas with adjacent Lot 3 . . . on which . . . is located a retail complex" and that "an access drive" in the "westerly corner of Lot 2 . . . provides access to a parking area used primarily by retail patrons" as well as "some patrons of the hotel located on Lot 2." According to the surveyor's report, at the time of the survey (November 19, 1999), construction was "underway for new shops on land west of" Lots 1 and 2; a "so-called 'local connector'" already had been constructed. The surveyor's report noted that a "so-called 'by pass'" had been "proposed . . . , but construction ha[d] not yet begun."

Bellevue's deed to Lots 1 and 2 specified that the lots were conveyed with the 1986 Declaration and pursuant to, among other items: (1) "[f]acts, conditions, terms and restrictions" set forth in four recorded plans; and (2) another declaration except as modified by "a certain Purchase and Sale Agreement for Lots 1 and 2" between Settlers and Robert Cowan, James Cough, and Bernard Cough. Bellevue's deed mistakenly described the purchase and sale agreement between Settlers and Cowan, James Cough, and Bernard Cough as a January 25, 1986 agreement, instead of as a January 25, 1988 agreement, and misspelled Cowan's name as "Cowman."

The instant litigation concerns Settlers' expansion of its retail development in Settlers' Green before Bellevue purchased Lots 1 and 2 in November 1999. Between 1996 and December 1998, Settlers sought and obtained approval from the Town of Conway Planning Board to increase the size of its outlet shopping mall to approximately 240,000 square feet. To accomplish this expansion, Settlers consolidated Lots 3 and 4 with several other lots and with land located outside of Settlers' Green. The consolidation resulted in the creation of two new lots: Lots R1 and R2. Bellevue admits that in November 1999, when it purchased the Hotel Property, Settlers' expanded retail development was substantially complete.

3

Bellevue brought the instant lawsuit in 2008, seeking damages and equitable relief based upon claims that Settlers' 1996-1998 expansion of its retail business breached certain contractual and equitable obligations set forth in the 1986 Declaration. Bellevue's claims included: (1) a claim that Settlers breached its "easement duties" under the 1986 Declaration when, in the 1996-1998 planning board proceedings, it misrepresented its right to park on Bellevue's property, relocated roads that had been identified in the 1986 Declaration, and constructed buildings in the former roadbeds; (2) a claim that, when Settlers breached those "easement duties," Settlers was unjustly enriched; (3) a claim that Settlers breached a fiduciary duty by not exerting its "best efforts" to dedicate roads to the town; and (4) a claim that, in the 1996-1998 proceedings, Settlers slandered Bellevue's title by misrepresenting its right to park on Bellevue's property.

Settlers' counterclaims included claims for breach of contract and abuse of process. Settlers' breach of contract counterclaim concerns Bellevue's alleged failure, since 2005, to pay its share of expenses for maintaining the roads, parking, lighting, and landscaping in Settlers' Green, as required by the 1986 Declaration. Settlers' abuse of process counterclaim is based upon Bellevue's initiation and pursuit of the instant lawsuit and upon a February 2014 planning board decision to allow additional parking on Lot R2.

The parties tried the case to a jury over several days in April 2014. The jury and the court conducted a view. During the trial, Settlers moved for a directed verdict upon Bellevue's breach of contract, breach of fiduciary duty, and slander of title claims, arguing that they were time-barred under the three-year statute of limitations for personal actions. The trial court granted Settlers' motion on the breach of fiduciary duty claim and partially granted it on the breach of contract claim. As to Bellevue's slander of title claim, although the trial court agreed with Settlers that the claim was governed by a three-year, and not by a 20-year, statute of limitations, the court presented both statutes of limitations to the jury. Bellevue also moved for a directed verdict upon Settlers' abuse of process counterclaim. The trial court took that matter under advisement, allowing the issue to proceed to the jury pending a ruling.

Settlers prevailed at trial. The jury returned a verdict in favor of Settlers upon all of Bellevue's claims for legal damages. The jury awarded $1.00 plus attorney's fees on Settlers' abuse of process counterclaim and $121,801.92 plus interest and late fees upon Settlers' breach of contract counterclaim.

Bellevue's claims for equitable relief were decided by the court alone. The court ruled that Bellevue was not entitled to equitable relief upon its claims for breach of easement rights and duties and unjust enrichment.

After trial, Bellevue filed motions to reconsider various of the trial court's rulings at trial as well as: (1) a motion for JNOV upon its slander of title claim;

(2) a motion to set aside the verdict upon all of its claims and Settlers' counterclaims "on the basis of prejudice from improper evidence and argument presented at trial"; (3) a motion for remittitur upon Settlers' breach of contract counterclaim; and (4) a motion to set aside the verdict upon Settlers' abuse of process counterclaim and to direct a verdict upon that claim in favor of Bellevue. The trial court denied all of Bellevue's post-trial motions except its motion to set aside the verdict and direct a verdict in Bellevue's favor upon a portion of Settlers' abuse of process counterclaim. The trial court ruled that Bellevue's motion had merit to the extent that it concerned "the initiation and pursuit of the instant action." With respect to Settlers' abuse of process counterclaim pertaining to Bellevue's appeal of the February 2014 planning board decision, the court concluded that the record supported the jury's verdict upon that part of the counterclaim and upheld the jury's award of $1.00 in damages. The court ruled that Settlers was entitled to an award of the attorney's fees incurred in defending the planning board appeal. The trial court subsequently awarded Settlers $11,650 in attorney's fees and stayed that award pending adjudication of the instant appeal and cross-appeal. This appeal and cross-appeal followed.

## II. Issues

### A. Bellevue's Claims

#### 1. Breach of Easement Duties and Unjust Enrichment

Bellevue first argues that the trial court erred when it denied Bellevue equitable relief for its breach of easement duties and unjust enrichment claims. Bellevue's breach of easement duties and unjust enrichment claims stem from its contention that, in 1996-1998, Settlers breached the 1986 Declaration by expanding its easement to park on Lots 1 and 2 (now owned by Bellevue) and by relocating roads. The trial court concluded that Bellevue failed to meet its burden of proving breach of easement duties and unjust enrichment based upon the jury's finding, and the court's independent determination, that Settlers did not breach the 1986 Declaration.

Bellevue argues that Settlers breached the 1986 Declaration and knowingly misrepresented its right to use the parking on Lots 1 and 2 by claiming that the entirety of the expanded retail development had the right to park there when, in fact, only portions of the expanded development had any right to park, and that right to park was on Lot 1 alone. Bellevue also asserts that Settlers breached the 1986 Declaration by relocating roads and constructing buildings in the former roadbeds. According to Bellevue, the 1986 Declaration precluded Settlers from relocating the roads absent Bellevue's consent, which was never obtained.

5

The resolution of Bellevue's breach of easement duties and unjust enrichment claims, in part, turns upon the interpretation of the 1986 Declaration.  We review the trial court's interpretation of the 1986 Declaration de novo.  See Petition of Warden (State v. Roberts), 168 N.H. 9, 18 (2015) (explaining that "[w]e interpret written documents de novo").  We review the trial court's decision whether to grant equitable relief for an unsustainable exercise of discretion.  Benoit v. Cerasaro, 169 N.H. 10, 19 (2016).  In doing so, we determine "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made."  Id. at 20 (quotation omitted).  The party asserting that a trial court order is unsustainable "must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case."  Id. (quotation omitted).  "Our task is not to determine whether we would have found differently."  Id. at 21 (quotation and brackets omitted).  "Our only function on review is to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it."  Id.

Bellevue has the burden of demonstrating reversible error.  See Gallo v. Traina, 166 N.H. 737, 740 (2014).  Based upon our review of the trial court's order denying Bellevue relief on its claims for breach of easement duties and unjust enrichment, Bellevue's challenges to the order, the relevant law, and the record submitted on appeal, we conclude that Bellevue has not demonstrated reversible error.

### 2.  Breach of Fiduciary Duty

Bellevue argues that the trial court erred when it granted Settlers' motion for a directed verdict upon Bellevue's breach of fiduciary duty claim.  Bellevue contends that this was error because, contrary to the trial court's ruling, a reasonable finder of fact could have found that the 1986 Declaration created a fiduciary relationship between the parties.

The record does not entirely support Bellevue's framing of the issues.  According to the record submitted on appeal, Settlers moved for a directed verdict upon Bellevue's breach of fiduciary duty claim solely on the ground that it was untimely.  Thus, when the trial court granted Settlers' motion, it merely ruled that the claim was untimely.

Bellevue subsequently moved for reconsideration, arguing, as it argues on appeal, that the 1986 Declaration created a fiduciary relationship between the parties because, under that declaration, Settlers owned the roadways, and, thus, was in complete control over the process by which this "asset" was to be "sold" (here, transferred to the town).  Bellevue contended that the breach of fiduciary duty claim should have gone to the jury because there were factual questions as to whether Settlers owed a fiduciary duty to Bellevue and whether Settlers breached that duty by failing to use its "best efforts" to transfer the

6

roadways to the town.  In denying the motion to reconsider, the trial court observed that, even if the 1986 Declaration "could somehow be stretched beyond all recognition to establish a fiduciary duty," the jury was, in fact, asked whether Settlers failed to use its best efforts to transfer the development's roads to the town, and had answered that question "No."

A party is entitled to a directed verdict only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand.  DeBenedetto v. CLD Consulting Eng'rs, 153 N.H. 793, 812 (2006).  Absent an unsustainable exercise of discretion, we will not reverse a trial court's ruling on a motion for directed verdict.  Id.; see N.H. Boring v. Adirondack Envtl. Assocs., 145 N.H. 397, 399 (2000) (discussing the standard for reviewing the trial court's grant of a directed verdict); see also State v. Lambert, 147 N.H. 295, 296 (2001) (explaining our unsustainable exercise of discretion standard).  Based upon our review of the record submitted on appeal, we cannot say that the trial court unsustainably exercised its discretion by granting Settlers' motion for a directed verdict.

### 3.  Slander of Title

Bellevue argues that the trial court erred when it opined that a 3-year statute of limitations applied to Bellevue's slander of title claim.  However, the record on appeal demonstrates that the trial court's ruling did not affect the case presented to the jury.  The jury was specifically asked whether any slander of title had occurred within the 20-year statute of limitations.  To that question, the jury answered, "No."

Bellevue next asserts that the trial court erred by denying its motion for JNOV upon its slander of title claim because, it argues, "the sole reasonable inference that may be drawn from the uncontroverted evidence presented at trial, taken in the light most favorable to Settlers," is that Settlers intentionally published false statements about its right to park on Bellevue's property, knowing that those statements were false, and that such false statements caused Bellevue injury.

"A motion for JNOV relates to the sufficiency of the evidence and presents a question of law."  Akwa Vista v. NRT, 160 N.H. 594, 598 (2010).  "A party is entitled to JNOV only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand."  Id.  "In deciding whether to grant the motion, the trial court cannot weigh the evidence or inquire into the credibility of witnesses."  Id.  "If the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the court must deny the motion."  Id.

7

"Our standard of review of a trial court's denial of a motion for JNOV is extremely narrow." Id. "We will not overturn the trial court's decision absent an unsustainable exercise of discretion." Id. Based upon our review of the record submitted on appeal, we conclude that the trial court did not unsustainably exercise its discretion when it denied Bellevue's motion for JNOV on its slander of title action.

B. Settlers' Counterclaims

1. Abuse of Process

a. Initiation of the Instant Action

In its cross-appeal, Settlers argues that the trial court erred by granting Bellevue's motion to set aside the jury's verdict and to direct a verdict in favor of Bellevue on the portion of Settlers' abuse of process claim that pertained to the instant lawsuit and for declining to award fees for that claim. Settlers' abuse of process counterclaim concerning the instant lawsuit had two components. The first component related to Bellevue's initiation of the lawsuit. The second component concerned Settlers' contention that Bellevue abused the discovery process. The trial court granted Bellevue's motion as to both components.

We review the trial court's decision under our unsustainable exercise of discretion standard. See N.H. Boring, 145 N.H. at 399; see also Lambert, 147 N.H. at 296.

With respect to the trial court's decision relating to Bellevue's initiation of this lawsuit, Settlers acknowledges that "the trial court was correct to state that the initiation of a single suit, in and of itself, is not sufficient to constitute 'use of process.'" However, Settlers argues that Bellevue's initiation of the lawsuit sufficed in this case because Bellevue has brought "serial suits" against Settlers over the years.

"An action for abuse of process is concerned with the improper use of process after it has been issued." Tessier v. Rockefeller, 162 N.H. 324, 335 (2011) (emphasis added). "The gravamen of the misconduct for which liability for abuse of process is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed." Id. (quotation, brackets, and ellipsis omitted).

Here, as a matter of law, Settlers could not bring an abuse of process counterclaim based solely upon the fact that the suit was initiated, even if Bellevue initiated it with an improper motive and even if it is but one of several

that Bellevue has brought against Settlers.  Thus, we conclude that the trial court did not unsustainably exercise its discretion when it set aside the jury's verdict on this portion of Settlers' abuse of process counterclaim.

With respect to Settlers' claim that Bellevue abused the discovery process, the trial court set aside the jury's verdict upon that claim based upon its determination that Bellevue "used its discovery requests to accomplish its intended purpose of building a case" against Settlers.  The court observed that it had granted permission to Bellevue to compel discovery of Settlers' leases because they were relevant to Bellevue's case and were produced under a protective order.  The court ruled that, even though the jury found that Bellevue had an ulterior motive, because "Bellevue carried out the process to its authorized conclusion, . . . its motion for directed verdict on the abuse of process counterclaim as it relates to" its pursuit of the instant action "has merit."  (Quotation omitted.)

The tort of abuse of process "comprises two essential elements:  an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding."  Clipper Affiliates v. Checovich, 138 N.H. 271, 276 (1994).  "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club."  Id. at 276-77 (quotation omitted).  "There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort."  Id. at 277 (quotation omitted).  "Absent some form of compulsory process forcing the performance or forbearance of some prescribed act, a claim of abuse of process fails."  Id. (quotation and citation omitted).  "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."  Restatement (Second) of Torts § 682 cmt. b at 475 (1977).

Settlers has the burden of demonstrating reversible error.  See Gallo, 166 N.H. at 740.  Based upon our review of the trial court's order granting Bellevue a directed verdict upon Settlers' abuse of discovery process counterclaim, Settlers' challenges to that order, the relevant law, and the record submitted on appeal, we conclude that Settlers has not demonstrated reversible error.  In light of our decision, we need not address the parties' arguments regarding whether Settlers was entitled to attorney's fees for this portion of its abuse of process counterclaim.

### b.  Planning Board Appeal

Bellevue argues that the trial court erred by failing to set aside the verdict and by failing to direct a verdict in its favor on the part of Settlers'

abuse of process counterclaim related to the February 2014 planning board decision. Bellevue asserts that it is entitled to a directed verdict because: (1) it did not use "process"; (2) it did not act with an improper purpose; and (3) Settlers did not suffer damages. Bellevue also argues that the trial court erred when it awarded attorney's fees for this counterclaim. We review the trial court's decision under our unsustainable exercise of discretion standard. See DeBenedetto, 153 N.H. at 812 (discussing standard by which we review a trial court decision denying a motion for a directed verdict); In the Matter of Mason & Mason, 164 N.H. 391, 399 (2012) (discussing standard by which we review a trial court's award of prevailing party attorney's fees).

Bellevue has the burden of demonstrating reversible error. See Gallo, 166 N.H. at 740. Based upon our review of the trial court's order denying Bellevue's motion and granting attorney's fees to Settlers, Bellevue's challenges to that order, the relevant law, and the record submitted on appeal, we conclude that Bellevue has not demonstrated reversible error.

In addition, in a two-sentence footnote, Bellevue asserts that it continues to believe that the trial court erred when it allowed Settlers to amend its abuse of process claim at trial to add allegations related to Bellevue's appeal of the February 2014 planning board decision. We conclude that this argument is insufficiently developed for our review. See Stewart v. Bader, 154 N.H. 75, 78 (2006).

### 2. Breach of Contract

Bellevue contends that the trial court erroneously denied its motion for remittitur on Settlers' breach of contract counterclaim because, Bellevue maintains, the jury's verdict was conclusively against the weight of the evidence.

New Hampshire law does not require that damages be calculated with mathematical certainty, and the method used to compute them need not be more than an approximation. Boynton v. Figueroa, 154 N.H. 592, 606 (2006). Whether remittitur is proper rests with the trial court's sound discretion. Id. "Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively against the weight of the evidence." Id. (quotation omitted). The amount of a verdict is conclusively against the weight of the evidence only if no reasonable jury could have reached it. Id.

Once the trial court has reviewed the amount of the verdict under this standard, we will not disturb the court's finding unless no reasonable person could make it. Id. at 606-07. "Our task on review is not to attempt to ascertain or divine the one and only correct verdict." Id. at 607 (quotation omitted). Absent an unsustainable exercise of discretion, we will not reverse

the trial court's decision.  Id.  The party seeking to modify the verdict's amount bears a heavy burden.  Id.  Based upon our review of the record, we conclude that the trial court did not unsustainably exercise its discretion by denying Bellevue's motion for remittitur because there is evidence in the record to support the damage award.

### 3.  Prevailing Party Attorney's Fees

Settlers argues that it was entitled to prevailing party attorney's fees because "[t]he jury, by rendering a verdict in favor of Settlers on the [counter]claim of abuse of process, clearly found that Bellevue's pursuit of this action was in bad faith and for an improper motive."  Settlers reasons that, even though the trial court set aside the jury's verdict on Settlers' abuse of process counterclaim as it related to the initiation and pursuit of this lawsuit, the trial court should have granted Settlers attorney's fees, nonetheless, under the "bad faith litigation" exception to the general rule that the prevailing party is not entitled to such fees.  See Harkeem v. Adams, 117 N.H. 687, 690-91 (1977).

Although each party to a lawsuit normally bears the expense of its own attorney's fees, there are judicially-created and statutory exceptions to this rule.  Bedard v. Town of Alexandria, 159 N.H. 740, 744 (2010).  As to judicially-created exceptions, attorney's fees have been awarded based upon two separate theories:  "bad faith litigation" and "substantial benefit."  Id. (quotations omitted).  Under the bad faith litigation theory, an award of attorney's fees is proper when "one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action."  Harkeem, 117 N.H. at 691 (quotation and citations omitted).

We will not overturn the trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion.  In the Matter of Mason & Mason, 164 N.H. at 399.  "We give tremendous deference to the trial court's decision on attorney's fees."  Id.

Settlers' reliance upon the jury's verdict on its abuse of process counterclaim as a proxy for a finding that Bellevue acted in "bad faith" sufficient to award attorney's fees is mistaken.  That verdict was set aside. There was, therefore, no jury finding to support an award of bad faith litigation attorney's fees.  Nor did the trial court find that Bellevue initiated and pursued the instant lawsuit in "bad faith."  Under these circumstances, we cannot say that the trial court unsustainably exercised its discretion by denying Settlers' an award of attorney's fees for Bellevue's alleged "bad faith" in initiating and pursuing the instant action.

III. Conclusion

For all of the foregoing reasons, therefore, we affirm the trial court's decisions challenged in this appeal and cross-appeal.

Affirmed.

DALIANIS, C.J., and CONBOY, J., and MANGONES, J., retired superior court justice, specially assigned under RSA 490:3, concurred.

**Eileen Fox,**
**Clerk**