**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0463, <u>Kishan, Inc. & a. v. Margaret L. Jalbert & a.</u>, the court on March 24, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiffs, Kishan, Inc. (Kishan), Shreya Corporation, and Chankya Investment, LLC, appeal a verdict, entered following a jury trial in Superior Court (<u>Tucker</u>, J.), awarding them $10,000 for breach of contract by the defendants, Margaret Jalbert (Margaret) and Joseph Jalbert, and awarding the defendants $65,000 for Kishan's breach of the same contract.  The plaintiffs argue that the trial court erred by: (1) not utilizing their proposed special verdict form which, they assert, would have directed the jury to rule upon the defendants' counterclaims only if it first rejected the plaintiffs' claims; (2) not granting their motion for judgment notwithstanding the verdict on the basis that, pursuant to the material breach doctrine, the record compelled a finding that the defendants were in material breach of the contract and, thus, that Kishan's performance thereunder was excused; (3) not ruling on their request for a declaratory judgment that Kishan's performance was excused as a matter of law; and (4) awarding the defendants attorney's fees under the contract.

"A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract."  <u>Lassonde v. Stanton</u>, 157 N.H. 582, 588 (2008) (quotation and brackets omitted).  Under the material breach doctrine, a breach that is sufficiently material and important to justify ending the whole transaction constitutes a total breach that discharges the injured party's contractual obligation to perform.  <u>Fitz v. Coutinho</u>, 136 N.H. 721, 725 (1993); <u>see</u> 14 Richard A. Lord, <u>Williston on Contracts</u> § 43.5, at 614-25 (4th ed. 2013).  A breach that is not material will not discharge the injured party's obligation to perform; however, the injured party may still recover damages for the breach.  <u>See</u> <u>Fitz</u>, 136 N.H. at 724-25; 14 <u>Williston on Contracts</u>, <u>supra</u> § 43.5, at 617-24; <u>cf.</u> <u>Robinson v. Crowinshield</u>, 1 N.H. 76, 79 (1817) (holding that, although the defendant had already recovered against the plaintiffs for breach of contract, the plaintiffs were entitled to recover against the defendant for breach of a different obligation under the same contract so long as they substantially performed).

"For a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." Found. For Seacoast Health v. Hosp. Corp. of America, 165 N.H. 169, 181-82 (2013) (quotation and brackets omitted).

> A breach is "material" if: (1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions; (2) the breach substantially defeats the contract's purpose; or (3) the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract.

Id. at 182 (quotations omitted). Whether a particular breach constitutes a material breach is a question of fact for the trier of fact to resolve. Id. at 181; see also Fitz, 136 N.H. at 725.

Because the material breach doctrine excuses a party's performance under a contract, it constitutes an affirmative defense when asserted in response to a claim for breach of contract. See Meaney v. Rubega, 142 N.H. 530, 532 (1997) (defining "affirmative defense" to mean any matter raised by a defendant that admits the plaintiff's allegations but provides an excuse or justification for the allegations or otherwise defeats the plaintiff's claim); Favor v. Philbrick, 7 N.H. 326, 335 (1834) (stating that any legal excuse for non-performance of a contract was a matter for the defendant to raise and did not impose any burden of proof upon the plaintiff); cf. Veino v. Bedell, 99 N.H. 274, 276 (1954) (holding that lack of consideration and illegal consideration are affirmative defenses to an action on a promissory note). As such, any party claiming that its contractual performance is excused due to the other party's material breach bears the burdens of production and persuasion as to the defense, and is obligated to timely raise it. See Akwa Vista v. NRT, 160 N.H. 594, 600 (2010); Goudreault v. Kleeman, 158 N.H. 236, 256 (2009).

The contract at issue in this case was a lease for real property owned by the defendants consisting of two first-floor commercial units and an un-insulated garage used for storage; residential units, which were not subject to the lease, were located above the leased space. An interior wall separated the commercial units, and a structural wall separated one of the commercial units from the garage. In total, the leased property comprised approximately 4,000 square feet, 1,500 square feet of which was the garage. Kishan planned to renovate the leased space and utilize it for a convenience store.

Under the terms of the lease, the defendants were responsible for removing the wall that separated the two commercial units and replacing some damaged ceiling tiles. Kishan was responsible for making all other alterations and improvements, and was obligated to obtain the defendants' prior written

2

consent for any such improvements or alterations. The lease provided that, if the property were partially destroyed, but could still be occupied, rent would be abated until the defendants could repair the property, and that if they could not repair it within sixty days, Kishan had the option to terminate the lease. Upon termination of the lease "for any reason," Kishan was required to "return the Leased Premises to [the defendants] in substantially the same state of repair as existing upon the date set for the commencement of the initial term, or as such may have been subsequently improved . . . ."

The lease was for an initial seven-year term beginning on March 1, 2014, and was renewable for up to three additional seven-year terms. The rent was set at $3,250 per month for the first year of the lease, with the exception of the first four months of the lease term when Kishan was obligated to pay only $1,625 per month. The parties anticipated that Kishan would be renovating the property during the initial four-month period, and would open the convenience store by July 1. In negotiating the initial rent of $3,250 per month, the parties agreed upon a rate of $12 per square foot for the commercial space and $6 per square foot for the storage space.

In early March 2014, a motorist crashed into the exterior wall of one of the commercial units. After a municipal building inspector examined the damage and ensured that the building was secure and structurally-sound, Margaret negotiated with the contractor who was going to perform Kishan's renovation work to also repair the damage caused by the crash.

Kishan did not perform any renovation work until May 2014. On May 2, Margaret provided written approval for detailed renovation plans submitted by Kishan's contractor. The plans did not indicate that any changes would be made to the structural wall separating the garage from the commercial units. Around the end of June or early July, Margaret discovered that the contractor had removed the sheetrock, insulation, and support boards from the structural wall separating the commercial space from the garage, leaving only the framing in place. She then learned that Kishan's plan was to remove a portion of that wall in order to install a "beer cave"—a walk-in cooler, accessible to customers, holding beer and other cold beverages—inside the garage. Although the plaintiffs claimed that Margaret had verbally approved their plan to remove that wall, Margaret denied that she had ever granted such approval, and there is no dispute that she had not provided prior written approval for the wall's demolition.

Margaret testified that, because Kishan planned to use a portion of the garage for the "beer cave," and because the parties had negotiated a lower rental rate for the garage as storage space, she told Kishan's representatives that she thought an increase in rent would be fair. She acknowledged at trial, however, that under the terms of the lease, she could not insist upon an increase in rent. Kishan's representatives, by contrast, testified that Margaret

3

demanded an increase in rent in exchange for her permission to alter the wall. After Margaret raised the issue of increased rent, Kishan stopped all work and abandoned the site. When Kishan left the property, it was in a state of demolition, and was not rentable. In order to comply with the building code, the defendants were required to install a firewall in place of the wall that Kishan had removed, costing the defendants more than $9,000.

On July 8, 2014, Kishan, through counsel, sent the defendants a document entitled "Construction Assent," which purported to authorize Kishan "to make all alterations or improvements" to the property "as set forth in" a building permit and floor plan, and which Kishan asserted would have allowed the alterations to the wall. Margaret replied on July 25, stating that she "need[ed] to see the written permission for the opening up and moving the wall between the garage and storefront." Kishan's counsel threatened to declare a default of the lease and to file suit. Margaret responded that Kishan was in default because it had not paid rent for August. At that point, the defendants had not yet repaired the damage caused by the car accident.

The plaintiffs filed suit on August 6, 2014, seeking damages for breach of contract, and a declaratory judgment that: (1) they were not in breach of the lease for not paying rent or for "their work done in anticipation of building the convenience store"; (2) the defendants had "acted in a commercially unreasonable fashion"; and (3) the plaintiffs were "relieved of any future obligation under the Lease." The defendants asserted counterclaims seeking damages for breach of the lease. At trial, the plaintiffs claimed that the defendants had breached the lease by: (1) refusing to allow them to use the garage as part of the convenience store without an increase in rent; and (2) failing to repair the damages from the car crash in a timely manner. The defendants countered that the plaintiffs had breached the lease by: (1) making alterations to the wall between the commercial space and the garage without approval; (2) failing to pay rent; and (3) abandoning the property during the lease term and not restoring it. The parties additionally each asserted claims for breach of the implied covenant of good faith and fair dealing.

The trial court instructed the jury as follows as to the meaning of breach of contract:

> To establish its breach of contract claim, the party must prove it is more probable than not that the other party failed to fulfill the obligations it has assumed under the contract and that the failure was important to the purpose of the contract and not merely technical or incidental to it.

> A breach of contract occurs when there is a failure without legal excuse to perform any promise that forms the whole or part of the contract.

At no point did the trial court instruct the jury as to the material breach doctrine.  Instead, it directed the jury to consider each of the breach of contract claims, and to "determine what amount of damages, if any," that a party was entitled to recover if the jury found that that party had "proved any of its breach of contract claims."

The trial court also reviewed the special verdict form with the jury during its instructions.  That form directed the jury to answer the following four questions: (1) had Kishan proved more probably than not "that Margaret . . . breached the lease"; (2) if yes, what were Kishan's damages; (3) had Margaret proved more probably than not "that Kishan . . . breached the lease"; and (4) if yes, what were Margaret's damages.  The form did not direct the jury to make specific findings as to any of the claimed breaches, to determine whether any of the claimed breaches was material, or to decide which party breached the lease first.  Nor did the form direct the jury to consider any party's claims only if it found that that party was not already in material breach of the lease at the time of the claimed breaches.  At the close of the instructions, counsel for the plaintiffs stated that he had no objection to the instructions.

During its deliberations, the jury posed the following question to the trial court: "Was the lease legally terminated when [Kishan's counsel] claimed default on July 25th through email to [Margaret], or is the lease still in effect?"  The trial court responded as follows: "A claim of default does not terminate a lease.  The claim of each side is that the other breached the lease, so you must decide what breach, if any, occurred and not whether the [lease is] terminated."  Counsel for the plaintiffs stated that he did not object to the response.

The jury returned the special verdict form, specifically finding that Kishan had proved that Margaret breached the lease, that Kishan's damages were $10,000, that Margaret had proved that Kishan breached the lease, and that Margaret's damages were $65,000.  The plaintiffs moved for judgment notwithstanding the verdict, arguing that the jury had found that Kishan had "proved a material breach of contract," that that finding necessarily meant that the jury had rejected the defendants' claim that Kishan breached the contract by removing the wall, that the other breaches claimed by Kishan occurred after the defendants were in material breach of the lease, and that, therefore, the defendants were not entitled to any damages under the material breach doctrine.  This analysis, according to the plaintiffs, was supported by the "strange question" posed by the jury during its deliberations.  The trial court denied the motion, finding that the evidence, viewed most favorably to the defendants, supported a finding that Kishan had materially breached the lease first either by demolishing the structural wall without written consent or by failing to pay August rent by its July 25 due date.  Although the trial court acknowledged that the special verdict form could have been more specific, it noted that the parties had "agreed to the instructions and the verdict format

before they were presented to the jury," and that the parties had not objected "when given the opportunity at the close of the instructions."

The plaintiffs moved for reconsideration, arguing that the trial court was obligated to rule upon their request for a declaratory judgment, that the court was required, based upon the jury's verdict, to grant a declaratory judgment that Kishan was not in material breach when the defendants breached, and that, in light of the jury's question during deliberations, the plaintiffs were entitled to a new trial due to mistake. In denying the motion, the trial court observed that the request for declaratory relief presented the same issues raised by the counterclaims, that at no time during trial did the plaintiffs insist upon a declaratory ruling as opposed to a jury verdict on the counterclaims, and that the plaintiffs did not object to the instructions directing the jury to decide the counterclaims. Had the plaintiffs insisted on a ruling upon their declaratory judgment petition at trial, the trial court noted that it likely would have dismissed the declaratory judgment request because it presented the same issue as the counterclaims. The trial court further noted that "[t]o the extent that the declaratory judgment claim included a request for a finding on whether Kishan was absolved of liability if [Margaret] breached the lease, that issue could have been addressed in the jury instructions."

Upon this record, we conclude that the plaintiffs have waived their arguments that the trial court erred by not utilizing their proposed special verdict form, by not ruling that, as a matter of law, their performance was excused pursuant to the material breach doctrine, and by not ruling on their request for a declaratory judgment. It is a longstanding rule that parties may not have review of matters they did not timely raise in the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). "Issues must be raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct claimed errors in the first instance." O'Hearne v. McClammer, 163 N.H. 430, 438 (2012) (quotation omitted); see also Transmedia Restaurant Co. v. Devereaux, 149 N.H. 454, 458-59 (2003) (holding that challenge to trial court's failure to provide a jury instruction was not preserved by raising issue in post-trial motions). It is the appealing party's burden to establish that the issues raised on appeal were timely raised in the trial court. Bean, 151 N.H. at 250.

In this case, the instructions and special verdict form directed the jury to consider all breach of contract claims, and to decide simply whether each of the parties had "breached the lease," and what damages resulted. The jury was not directed to find which specific breaches occurred, whether any of those breaches was material, or which material breaches occurred first. The plaintiffs did not object, either to the instructions or to the special verdict form. To the contrary, the plaintiffs' counsel affirmatively stated that he had no objection to the instructions. Likewise, when the jury asked whether the lease was still in effect after Kishan declared default, the plaintiffs' counsel

6

affirmatively stated that he had no objection to the trial court's instruction to "decide what breach, if any, occurred and not whether the is lease terminated." As the trial court observed, to the extent the plaintiffs' theory was that Kishan's performance was excused by virtue of the defendants' material breach, that theory could have been presented through the jury instructions.

We reject the plaintiffs' argument that they preserved their challenges to the special verdict form by proposing their own special verdict form. Merely proposing a special verdict form or jury instructions is not sufficient to alert the trial court to alleged error contained within the special verdict form or instructions utilized at trial. See State v. Nightingale, 160 N.H. 569, 577 (2010); Berliner v. Clukay, 150 N.H. 80, 84-85 (2003); Chadwick v. CSI, Ltd., 137 N.H. 515, 520-21 (1993).

Nor did the plaintiffs' initial request for a declaratory judgment or post-trial motions preserve their arguments that the trial court erred by not ruling, as a matter of law, that their obligations under the lease were discharged. The trial court's instructions and special verdict form allowed the jury to rule precisely as it did. See Berliner, 150 N.H. at 85 (finding that defendant waived argument that the evidence did not support jury's selection of statutory damages multiplier because the jury instructions, to which the defendant did not object, allowed the jury to apply the statutory multiplier that it selected). Having acquiesced in jury instructions and a special verdict form that directed the jury to consider all breach of contract claims and to determine the damages that each party was entitled to recover, the plaintiffs cannot insist upon the post-trial application of their material breach defense. See id.; see also Akwa Vista, 160 N.H. at 600 (holding that, because defendants had not raised statute of frauds defense either before or during trial, they could not preserve it by raising it in a post-trial motion for judgment notwithstanding the verdict).

We note, however, that even if the plaintiffs had preserved their arguments that their obligations under the lease were excused as a matter of law, the jury did not necessarily find, as the plaintiffs contend, that the defendants materially breached the contract before Kishan breached it. Rather, we agree with the trial court that the jury reasonably could have found that Kishan materially breached the contract first by removing the structural wall without approval. Similarly, the jury reasonably could have found, upon this evidence, that although the defendants breached the lease, they did not materially breach it. We further agree with the trial court that, because the defendants' breach of contract counterclaims raised the same issues that were the basis of the plaintiffs' request for a declaratory judgment, the plaintiffs were not entitled to a ruling on their request for a declaratory judgment. See Coyle v. Battles, 147 N.H. 98, 100 (2001).

Finally, we address the plaintiffs' argument that the trial court erred by awarding the defendants attorney's fees under the lease. The plaintiffs' only

argument as to this issue is as follows: "Once the court determines [the issues raised by the plaintiffs on appeal as to the material breach doctrine] then the [trial court] order for attorney['s] fees can be modified as on its face the new Judge just followed the previous decision of the trial court."  Because we conclude that the trial court did not err by denying the plaintiffs' motions for judgment notwithstanding the verdict and for reconsideration, we reject their argument that the trial court erred by awarding the defendants attorney's fees.

We grant the defendants' request for an award of attorney's fees incurred in defending this appeal pursuant to paragraph 20 of the parties' lease.  On or before April 3, 2017, the defendants shall submit an affidavit of attorney's fees and costs incurred in defending this appeal.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**