Original
No. 2010-162

PETITION OF STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE
(New Hampshire Retirement System)

Argued: November 17, 2010
Opinion Issued: February 23, 2011

*Molan, Milner & Krupski, PLLC*, of Concord (*Glenn R. Milner* on the brief and orally), for the petitioner.

*Sulloway & Hollis, PLLC*, of Concord (*William D. Pandolph* on the brief and orally), for the respondent.

CONBOY, J. The petitioner, State Employees' Association of New Hampshire (SEA), seeks review of a ruling of the board of trustees (board) of the respondent, New Hampshire Retirement System (NHRS), that the NHRS lacked authority under RSA 100-A:3, IX (Supp. 2010) to classify certain group I jobs at the New Hampshire Department of Corrections (DOC) as group II jobs. We affirm.

The record supports the following facts. The NHRS is a governmental retirement plan as defined under the provisions of the United States Internal Revenue Code of 1986. *See* RSA 100-A:2 (Supp. 2010). Membership in the NHRS is limited to New Hampshire state employees, teachers, permanent policemen, and permanent firemen, all as defined in RSA 100-A:1 (Supp. 2010). *See* RSA 100-A:3 (Supp. 2010). Members defined as teachers or other state employees are classified as group I members of the NHRS while members defined as permanent policemen or permanent firemen are classified as group II members. *See* RSA 100-A:1, X (Supp. 2010). Under the provisions of RSA chapter 100-A, group II members are entitled to apply for retirement earlier than group I members, and to receive certain other more favorable retirement benefits. *See* RSA 100-A:52, :52-a, :52-b (Supp. 2010).

The DOC is a state agency responsible for managing the State's prisons, transitional housing units, and district probation and parole offices. On

April 16, 2009, the SEA requested that the New Hampshire Personnel Director certify that sixty-two DOC positions, currently classified as group I, meet the statutory requirements of "permanent policeman." *See* RSA 100-A:1, VII (Supp. 2010) (defining "permanent policeman," in part, as any DOC correctional line employee who works "in close and immediate contact with prisoners on a daily basis and ha[s] responsibility for security"). The positions at issue include accountants, administrators, carpenters, dieticians, maintenance technicians, engineers, plumbers, warehouse workers, stock clerks and recreational therapists. Following inquiry to the DOC Commissioner, the Personnel Director determined that each of the positions met the requirements for a "permanent policeman" under the statute. The Personnel Director then notified the NHRS that as of June 8, 2009, the sixty-two positions in question met "all of the requirements" for group II classification, and she requested that the NHRS "include them in Group II."

On November 10, 2009, the NHRS refused on jurisdictional grounds to classify the positions as group II positions, stating it would "properly defer to the Legislature the reclassification of the 60+ Department of Corrections jobs from Group I to Group II . . . ." In December 2009, the SEA moved for rehearing and reconsideration of that decision. In February 2010, the NHRS denied the SEA's motion for rehearing and reconsideration. The SEA then petitioned this court for a writ of certiorari.

■ "Because RSA chapter 100-A does not provide for judicial review, a writ of certiorari is the sole remedy available to a party aggrieved by a decision of [the] NHRS." *Petition of Poulicakos*, 160 N.H. 438, 441 (2010) (brackets, quotations and citation omitted). "Our standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Id.*

The single question presented is whether, given the provisions of RSA 100-A:3, IX, the NHRS erred when it ruled that it had no jurisdiction to reclassify sixty-two group I positions at the DOC as group II positions. Resolving this question requires that we interpret the relevant statute, which presents a question of law that we review *de novo. Petition of Farmington Teachers Assoc.*, 158 N.H. 453, 456 (2009).

"We are the final arbiter of the intent of the legislature as expressed in words of the statute considered as a whole." *Id.* "When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." *Bennett v. Town of Hampstead*, 157 N.H. 477, 483 (2008). "We interpret legislative intent from the statute as written and will not consider

what the legislature might have said or add language that the legislature did not see fit to include. We interpret a statute in the context of the overall statutory scheme and not in isolation." *Farmington Teachers*, 158 N.H. at 456. "If a statute is ambiguous, however, we consider legislative history to aid our analysis. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *Laramie v. Stone*, 160 N.H. 419, 436 (2010) (quotation omitted).

RSA 100-A:3, IX (Supp. 2010) provides as follows:

> If there is any doubt as to the proper classification of a job in the retirement system, the trustees shall determine whether the person holding the job is an employee, teacher, permanent policeman, or permanent fireman as defined in RSA 100-A:1; provided, however, that a ⅔ vote shall be required to classify the job in group II, and further provided that in the case of a newly-created job held by more than one person, the job shall be classified in group I unless it is explicitly placed in group II by the legislation creating the job in the case of a state job, or by a majority vote of the legislative body of the political subdivision in the case of a political subdivision job. For the purposes of this paragraph, an increase in the number of persons holding a given job with a given employer shall not be considered as creation of a new job. No job shall be reclassified from group I to group II of the retirement system without legislation specifically authorizing a transfer from group I to group II.

The SEA argues that the first sentence of the statute "expressly grants the NHRS the authority to decide, in doubtful cases, the proper classification of jobs within the retirement system." The board, however, relied upon the last sentence of the statute to conclude that there was "insufficient legal basis for the NHRS Board to consider the[] positions for reclassification to Group II." Our task is to determine the legislature's intent in both authorizing the board to determine proper job classifications and requiring legislative action for reclassification of jobs to group II.

In its petition, the SEA "submits that the statute envisions two separate situations: one where there is a mistaken or doubtful classification which the NHRS can fix and a second where, due to a change in a job description or other circumstance, the elements of the job have changed where a former Group I job is now eligible for Group II membership (the latter case requiring legislative action)." In contrast, the board determined that the language of RSA 100-A:3, IX authorizes it to determine only "whether a 'newly created' job held by only one individual should be *initially* classified

in Group II," and that any "reclassification" into group II requires legislative approval. Where, as here, statutory language is ambiguous or subject to more than one reasonable interpretation, we review a statute's legislative history to aid our analysis. *See In the Matter of Scott & Pierce*, 160 N.H. 354, 359 (2010). Upon review, we hold that the legislative history of RSA 100-A:3, IX supports the conclusion of the board.

As originally enacted, RSA 100-A:3 did not contain paragraph IX. *See* RSA 100-A:3 (Supp. 1967). Subsequently, in 1987, HB 693 amended the statute in a number of ways, including the addition of paragraph IX. Laws 1987, ch. 335. That paragraph read simply, "No position shall be reclassified from group I to group II of the retirement system without legislation specifically authorizing a transfer from group I to group II." RSA 100-A:3, IX (Supp. 1988). The impetus for the amendment was the legislature's desire to include certain correctional line personnel within the definition of permanent policemen entitled to group II membership, but to "close the loophole" contained in the statute that allowed the DOC Commissioner to certify additional DOC personnel as permanent policemen entitled to group II membership without legislative approval for such classifications. *See* SENATE COMM. ON INS., H'RG ON HB 693 (April 28, 1987) (reprinted in Certified Record at 55-58). HB 693 also authorized the House Committee on Executive Departments and Administration to further study the certification process and qualifications for membership in group II. Laws 1987, 335:8.

As the Executive Departments and Administration Committee report on HB 693 explained:

> The Committee is concerned with the need for maintaining the integrity of Group II, membership in which has recently been expanded to include job classifications outside the original intent. Group II membership criteria should preserve the long-standing principle of special retirement provisions for policemen and firemen, recognizing that careers in these public-safety services involve greater than normal danger and stress over an extended period of years, with resulting shortened life expectancy, which warrants provision for early retirement. Group II membership should not be made available to every person whose job entails hazards and has some indirect, occasional, or short-term connection with public-safety, but should be reserved for those who are properly trained and qualified and can be presumed to be making a long-term career of public-safety services.
>
> . . . .

The amended bill prohibits further transfer of job positions from Group I to Group II without specific legislation[] and calls for a review by the Committee of Group II qualifications and positions for possible 1988 legislation.

N.H.H.R. JOUR. 569 (1987).

The following year, subsequent to the committee review, HB 1066 was enacted as Chapter 161. *See* Laws 1988, ch. 161. Chapter 161 redefined "permanent policeman" and further amended paragraph IX to add the language in the current version. *Id.*

On March 11, 1988, Representative Robert Hawkins testified at the Senate Insurance Committee hearing on HB 1066 regarding the issue of the board's authority to determine group II classification. He stated:

There are going to be some people that might tell you today that we have taken away from the Board of Trustees the fact that they have a right to determine whether a job is Group II or not. That's really not true. If you go into the job classifications portion of the bill where — there is a section in there that says that these people will make the final determination. Basically if there is a conflict with one guy. A new job is created and it has only one person in it, they will make the determination whether it is a Group II job or not. If two or more people go in there, though, then we, the Legislature, determine it. If there are groups of people that would like to go in and, we have the parole people now, and the Legislature in its ultimate wisdom are determining point blank whether these people will go into Group II or not — that is the way it should be. No one should be able to circumvent the law and get people into the Group II system and not have to go through the Legislature. This bill, I think, stops every loophole there is.

*See* SENATE COMM. ON INS., H'RG ON HB 1066 (March 11, 1988) (reprinted in State's Addendum at 41-42).

■ Based upon the lengthy and specific discussions of group II membership contained in the legislative history, including the above-cited testimony, we conclude that the first and last sentences of RSA 100-A:3, IX may be reconciled as follows. The first sentence addresses the board's authority to determine the classification of a newly created position held by one person. This is evidenced by the use of the singular term "person" within the sentence. Any classification as group II of positions held by more than one person, and any reclassification of positions from group I to group II, may be accomplished only by legislative action. Thus, we hold that RSA

100-A:3, IX prohibits the NHRS board from reclassifying the group I positions at issue to group II, without legislative approval.

While the petitioner argues that the positions have always met the requirements for group II membership but were merely "mistakenly" classified as group I, there is no dispute that the positions are presently classified as group I. Thus, any change in classification to group II would necessarily entail "reclassification" of the positions — an action requiring legislative approval under RSA 100-A:3, IX.

The SEA argues that the board has reclassified other positions from group I to group II without legislative approval. As evidence, the SEA points to the November 9, 2009 board minutes reflecting the reclassification of a DOC stock control supervisor. However, it is apparent from the board minutes that the legislature previously approved the stock control supervisor position as group II. Moreover, even assuming that the board impermissibly reclassified the stock control supervisor position without legislative approval, evidence of this singular action cannot be deemed an "administrative gloss" indicative of legislative intent. *See DHB v. Town of Pembroke*, 152 N.H. 314, 321 (2005) (" '[A]dministrative gloss' is placed upon an ambiguous clause when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. If an 'administrative gloss' is found to have been placed upon a clause, the [agency] may not change its *de facto* policy, in the absence of legislative action, because to do so would, presumably, violate legislative intent.").

Finally, we address the SEA's passing argument that an alternative interpretation of RSA 100-A:3, IX exists whereby the board determines, in doubtful cases, whether a position belongs in group II and the legislature then approves the reclassification. This argument is of no avail. As noted above, the legislative history of the statute demonstrates the intent of the legislature to reserve to itself the power to reclassify positions from group I to group II. Accordingly, we decline to interpret the statute in a way that is contrary to the intent of the legislature.

*Affirmed.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.