Grafton
No. 2013-630

RICHARD MURRAY & a.

v.

KEITH MCNAMARA & a.

Argued: June 18, 2014
Opinion Issued: March 20, 2015

*Edward D. Philpot, Jr., PLLC*, of Laconia (*Edward D. Philpot, Jr.* on the brief and orally), for the plaintiffs.

*Plymouth Law Center*, of Plymouth (*Gabriel Nizetic* and *Nikolas Frye* on the brief, and *Mr. Nizetic* orally), for the defendants.

BASSETT, J. The defendants, Keith McNamara, Shirley Benton, and Jerel Benton, appeal: (1) a jury verdict in favor of the plaintiffs, Richard and Mary Murray, on their claim that the defendants breached the implied warranty of workmanlike quality; (2) an order of the Superior Court (*Vaughan*, J.) denying their motion to dismiss the plaintiffs' New Hampshire Consumer Protection Act (CPA) claim, *see* RSA ch. 358-A (2009 & Supp. 2014); and (3) an order of the Superior Court (*Bornstein*, J.) finding that the defendants violated the CPA when they built the plaintiffs' home with latent structural defects that caused mold growth. The defendants argue that, because the plaintiffs' claim is exempt from the CPA, the trial court erred by denying their motion to dismiss. The defendants also assert that the trial court erred by denying their motion for a judgment notwithstanding the verdict (JNOV) on the plaintiffs' breach of implied warranty claim. We affirm in part and reverse in part.

The trial court found, or the record supports, the following facts. In 2004, the defendants, owners of a construction business, built a house for David Downing. Four years later, in February 2009, the plaintiffs purchased the house for $120,000. Shortly before their purchase, the plaintiffs visited the house several times and had it inspected; neither the plaintiffs nor the home inspector observed mold in the house. Nonetheless, in June 2009, after living in the house for several months, the plaintiffs discovered mold in a closet. By the fall of 2009, mold was present throughout the house and on the plaintiffs' belongings, and they were compelled to move into a hotel while they attempted to remedy the problem.

The plaintiffs hired a mold remediation contractor, Robert Barish, to investigate and remove the mold. Barish began the remediation, but after assessing the construction of the house, Barish concluded that, unless the structural problems that promoted mold growth were fixed, the mold would return. The plaintiffs then hired Joel Fisher, a professional engineer, to inspect the house. Fisher told the plaintiffs that the structural repairs needed to address the mold problem were "so extreme that it [was] not practical . . . from both a constructability and economic perspective" to make them, and he "recommend[ed] that the [house] be demolished and reconstructed." Realizing that the mold problem could not be easily remedied, the plaintiffs moved into a rental home.

In March 2011, the plaintiffs sued the defendants, asserting a claim under the CPA, a claim for breach of the implied warranty of workmanlike quality, and other claims that are not germane to this appeal. The defendants moved to dismiss the CPA claim, arguing that it was exempt from the CPA pursuant to RSA 358-A:3, IV-a (2009). The superior court denied the motion.

The trial court presided over a five-day jury trial on the breach of implied warranty claim, reserving the CPA claim for determination by the court itself. *See Hair Excitement v. L'Oreal U.S.A.*, 158 N.H. 363, 370 (2009) (holding that "[CPA] claims are not entitled to a trial by jury."). The jury returned a verdict in favor of the plaintiffs on the breach of implied warranty claim, awarding $70,000.

The defendants filed a motion for JNOV, which the court denied. In the same order, the court ruled in favor of the plaintiffs on the CPA claim. The court reasoned that, because the jury found that the defendants had breached the implied warranty of workmanlike quality, the defendants also had knowingly violated RSA 358-A:2, VII (2009), by "represent[ing] to the world in general . . . that the house had been so constructed in a workmanlike manner." The court awarded the plaintiffs double damages on the CPA claim in the amount of $348,116.74, plus costs and attorney's fees. This appeal followed.

*I. The CPA Claim*

The defendants first argue that the plaintiffs' CPA claim should have been dismissed because it is an "exempt" transaction pursuant to RSA 358-A:3, IV-a. The defendants contend that *Catucci v. Lewis*, 140 N.H. 243, 244-45 (1995), in which we held that the discovery rule does not apply to the exemption period established by RSA 358-A:3, IV-a, controls notwithstanding the 1996 amendment to the exemption provision. *See* Laws 1996, 165:3. The plaintiffs counter that, because of the post-amendment language of RSA 358-A:3, IV-a, *Catucci* is inapposite and their claim is not exempt.

In 1995, when we decided *Catucci*, RSA 358-A:3, IV-a "provide[d] that the [CPA] shall not apply to '[t]ransactions entered into more than 2 years prior to the complaint.' " *Catucci*, 140 N.H. at 244. Post-amendment, RSA 358-A:3, IV-a provides that "[t]ransactions entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of [the CPA]" are exempt from the CPA. RSA 358-A:3, IV-a.

We have not had occasion to construe RSA 358-A:3, IV-a in its current form. As a threshold matter, we are not persuaded by the defendants' contention that *Catucci* controls. We conclude that the 1996 amendment altered the language of RSA 358-A:3, IV-a to such a significant degree that *Catucci* does not dictate the outcome in this case. Rather, to determine whether the trial court erred when it declined to dismiss the plaintiffs' CPA claim, we must engage in interpretation of the amended statute. The interpretation of a statute is a question of law, which we review *de novo*. *See In the Matter of Liquidation of Home Ins. Co.*, 166 N.H. 84, 88 (2014). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, wherever possible, ascribe the plain and ordinary meanings to the words used. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.*

The United States District Court for the District of New Hampshire construed the exemption language in two recent cases. In *Lehane v. Wachovia Mortgage, FSB*, the court stated that RSA 358-A:3, IV-a exempts from the CPA "any claim involving a transaction that occurred more than three years before the date on which the plaintiff knew or should have known of its wrongful nature." *Lehane v. Wachovia Mortg., FSB*, No. 12-CV-179-PB, 2013 WL 1637166, at *3 n.5 (D.N.H. Apr. 16, 2013). In *Lehane*, the plaintiffs alleged that the defendant violated the CPA by accepting a fraudulent credit application even though it "knew or should have known that the income figure was false." *Id.* at *1. Finding that "the

[plaintiffs] were aware or should have been aware of the defendant's allegedly wrongful act" when it occurred, the court concluded that the plaintiffs' claim was not exempt from the CPA because "no time elapsed between the date of the wrongful conduct and the date on which plaintiffs[ ] should have known the conduct was wrongful." *Id.* at *3 n.5.

In *Bougopoulos v. Altria Group, Inc.*, the plaintiff alleged that the defendants, two cigarette manufacturers, violated the CPA by "making misrepresentations about the risks and addictive nature of their cigarettes, and by designing their cigarettes to be addictive." *Bougopoulos v. Altria Group, Inc.*, 954 F. Supp. 2d 54, 64 (D.N.H. 2013). The court explained that, unlike a statute of limitations, which "focuses on the plaintiff's knowledge of his injury and its [causal] relationship to the defendants' conduct," RSA 358-A:3, IV-a instead "focuses on the plaintiff's knowledge of the defendant's wrongful conduct" to determine whether a transaction is exempt from the CPA. *Id.* at 65.

We agree with the federal district court's interpretation of RSA 358-A:3, IV-a: To determine whether a claim is exempt from the CPA, we look back from the time that the plaintiffs "knew or reasonably should have known" of the alleged violation. If the transaction at issue occurred more than three years before that time, then it is exempt. The person claiming the exemption bears the burden of proving that the transaction is exempt. *See* RSA 358-A:3, V (2009).

There is no dispute that the transaction at issue here is the defendants' alleged construction of the house with latent structural defects, not any representations that the defendants made to others during or after construction. *See* RSA 358-A:2, VII. The house was completed in 2004 and was purchased by the plaintiffs five years later. Therefore, because the allegedly wrongful transaction occurred more than three years before the plaintiffs "knew or reasonably should have known" of it, we conclude that the construction of the house is an exempt transaction pursuant to RSA 358-A:3, IV-a and that the plaintiffs' CPA claim should have been dismissed. Thus, we reverse the trial court's ruling on the CPA claim.

*II. The Breach of the Implied Warranty of Workmanlike Quality Claim*

The defendants contend that the trial court erred in several respects when it denied their motion for JNOV on the plaintiffs' breach of implied warranty claim. "A motion for JNOV relates to the sufficiency of the evidence and presents a question of law." *Akwa Vista v. NRT*, 160 N.H. 594, 598 (2010). "A party is entitled to JNOV only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in

the light most favorable to the non-moving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand." *Id.* "In deciding whether to grant the motion, the trial court cannot weigh the evidence or inquire into the credibility of witnesses." *Id.* "If the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the court must deny the motion." *Id.* "Our standard of review of a trial court's denial of a motion for JNOV is extremely narrow." *Id.* "We will not overturn the trial court's decision absent an unsustainable exercise of discretion." *Id.*

■■■ The defendants first argue that JNOV was warranted because the plaintiffs' implied warranty claim was time-barred under RSA 508:4 (2010). RSA 508:4 requires that all personal actions be brought within three years of the act complained of, unless the discovery rule applies:

> [W]hen the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. The defendants contend that, because Downing, the first purchaser of the house, was present during its construction, and "observed all aspects of the construction," he either knew or should have known about any defects at the time of construction. Consequently, the defendants argue that, because Downing's knowledge is imputed to the plaintiffs as his successors in interest, the discovery rule does not apply to the breach of implied warranty claim, and the statute of limitations began to run in 2004 when the house was substantially completed. We disagree. Given the evidence that the defects in the house were latent, we cannot say that the "sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the [plaintiffs]," is that the defects were plain and obvious and, thus, would have been seen by Downing, as the defendants claim. *Akwa Vista,* 160 N.H. at 598.

■ The defendants next contend that JNOV was warranted because the plaintiffs failed to prove that it was "reasonably probable, not merely possible," that the defendants' improper construction caused the mold growth in the house. (Quotation omitted.) *See Nashua Hous. Auth. v. Wilson,* 162 N.H. 358, 361 (2011) ("In a civil action the burden of proof is generally on the plaintiff to establish its case by a preponderance of the evidence." (quotation omitted)). The plaintiffs presented expert testimony

from Barish and Fisher describing the significant defects in the construction of the house and the resulting mold growth. Although neither of the plaintiffs' experts testified that the home's structural defects "more probably than not" caused the mold growth, when the evidence is viewed in the light most favorable to the plaintiffs, see Akwa Vista, 160 N.H. at 598, the jury could have reasonably inferred that the defects in the construction probably caused the mold growth. Accordingly, we cannot say that the sole reasonable inference that may be drawn from the evidence is that the defendants' construction only possibly — rather than probably — caused mold growth. Id.

■ The defendants also assert that, because they built the house according to Downing's specifications, they should not be liable for breach of the implied warranty of workmanlike quality. See Perkins v. Roberge, 69 N.H. 171, 172 (1897) (holding that if contractor acts according to plans and specifications provided by purchaser or professional designer, and performs his job in a workmanlike manner, then contractor is not liable for damages caused by defects in the plans and specifications). We disagree. Here, there is no evidence that the house was built "in accordance with a plan and specifications" furnished by Downing. Id.; see Akwa Vista, 160 N.H. at 598-99. Downing testified that when the defendants approached him about building a house for his family, they "discussed it a little bit," and the defendants "were willing to do what they could." Downing testified that he "just wanted a one-story house with three bedrooms, a bath and a half," and that he "[d]idn't care if it even had a kitchen." Accordingly, we are not persuaded that the defendants are insulated from liability on the breach of the implied warranty of workmanlike quality claim.

■ The defendants next argue that JNOV was warranted because it was error for the trial court to allow the plaintiffs to claim consequential damages arising out of the breach of implied warranty claim. The plaintiffs sought damages for diminution in the value of the house caused by the mold, as well as consequential damages for the other financial losses that they incurred as a result of the defendants' breach of implied warranty. Relying solely upon Moulton v. Groveton Papers Co., 114 N.H. 505, 512-13 (1974), and Lempke v. Dagenais, 130 N.H. 782, 792 (1988), the defendants contend that recovery for consequential damages in breach of warranty cases is disallowed. However, neither Lempke nor Moulton stand for that legal proposition; thus, because the defendants' argument rests upon a faulty premise, we reject it. See Petition of George, 160 N.H. 699, 707 (2010).

The defendants also contend that JNOV is warranted on the breach of warranty claim because, in its order on the CPA claim, the trial court relied

on an email that was "previously ruled to be inadmissible and was never introduced into evidence." However, because we have reversed the trial court's judgment on the CPA claim, and given that the email at issue was not presented to the jury, the defendants have failed to show that they were prejudiced with respect to the breach of warranty claim.

Finally, the defendants argue that the trial court erred by denying their motion *in limine* to exclude evidence of the plaintiffs' mortgage balance of approximately $148,000. Because this argument was not raised in their notice of appeal or in the questions presented as articulated in the defendants' brief, we deem this argument waived. *See Granite State Mgmt. & Res. v. City of Concord*, 165 N.H. 277, 294 (2013).

*Affirmed in part; and reversed in part.*

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.