NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2016-0241


HALIFAX-AMERICAN ENERGY COMPANY, LLC & a.

v.

PROVIDER POWER, LLC & a.

Argued: June 1, 2017
Opinion Issued: February 9, 2018


Hinckley, Allen & Snyder, LLP, of Concord (Christopher H.M. Carter and Daniel M. Deschenes on the brief, and Mr. Carter orally), for the plaintiffs.


Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Andru H. Volinsky and Talesha L. Saint-Marc on the brief, and Mr. Volinsky orally), for the defendants.


BASSETT, J. The plaintiffs are four companies with common owners and operators: Halifax-American Energy Company, LLC; PNE Energy Supply, LLC (PNE); Resident Power Natural Gas & Electric Solutions, LLC (Resident Power); and Freedom Logistics, LLC d/b/a Freedom Energy Logistics, LLC. Collectively, they are referred to as the "Freedom Companies." The defendants are three companies and their owners: Provider Power, LLC; Electricity N.H., LLC d/b/a

E.N.H. Power; Electricity Maine, LLC; Emile Clavet; and Kevin Dean. Collectively, they are referred to as the "Provider Power Companies."

The Freedom Companies and the Provider Power Companies are engaged in the same business — arranging for the supply of electricity and natural gas to commercial and residential customers in New Hampshire and other New England states. The parties' current dispute concerns a Freedom Company employee whom the defendants hired, without the plaintiffs' knowledge, allegedly to misappropriate the plaintiffs' confidential and proprietary information. According to the plaintiffs, the defendants used the information obtained from the employee to harm the plaintiffs' business by improperly interfering with their relationships with their customers and the employee.

After a seven-day jury trial in Superior Court (Anderson, J.), the jury returned verdicts in the plaintiffs' favor on many of their claims, including those for tortious interference with customer contracts, tortious interference with economic relations with customers, tortious interference with the employee's contract, and misappropriation of trade secrets. The jury awarded compensatory damages to the plaintiffs on each of these claims, except the misappropriation of trade secrets claim, and included in the damages award $93,000 for the attorney's fees incurred by the plaintiffs in prior litigation against the employee for his wrongful conduct. The jury's total damages award, including the attorney's fees, was $556,208. Subsequently, the trial court awarded attorney's fees to the plaintiffs under the New Hampshire Uniform Trade Secrets Act (NHUTSA), see RSA ch. 350-B (2009).

On appeal, the defendants challenge: (1) the jury's verdicts on the plaintiffs' claims for tortious interference with customer contracts and the employee's contract; (2) the jury's award of damages for tortious interference with customer contracts and tortious interference with economic relations, and its inclusion in that award of the attorney's fees incurred in the plaintiffs' prior litigation against the employee; and (3) the trial court's award of attorney's fees to the plaintiffs under the NHUTSA. We affirm.

Before addressing the defendants' numerous appellate arguments, we highlight the following principles. First, we decline to review any argument that the defendants did not raise before the trial court. See State v. Blackmer, 149 N.H. 47, 48 (2003). "The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." Id. (quotation omitted). "This rule, which is based on common sense and judicial economy, recognizes that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." Id. (quotation omitted). As the appealing parties, it is the defendants' burden to provide this court with a record demonstrating that they raised their appeal arguments before the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). Moreover, although the plain error

2

rule allows us to consider errors not brought to the attention of the trial court, see Sup. Ct. R. 16-A, in this case, we exercise our discretion to consider plain error only when the defendants specifically argue under that rule.

Second, we confine our review to only those issues that the defendants have fully briefed. See Blackmer, 149 N.H. at 49. "[I]n the realm of appellate review, a mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review." Id. (quotation omitted).

Third, we will not review any issue that the defendants address in their brief, but did not raise in their notice of appeal. See id. An argument that is not raised in a party's notice of appeal is not preserved for appellate review. Id. For example, although the defendants purport to challenge the jury's verdict on the plaintiffs' misappropriation of trade secrets claim, the argument is not preserved for our review because the defendants did not include that issue in their notice of appeal.

Similarly, we will not address any issue that the defendants raised in their notice of appeal, but did not brief. The defendants raise 27 questions in their notice of appeal, but have briefed far fewer. Any issue that the defendants raised in their notice of appeal, but did not brief, is deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

With these principles in mind, we address only a fraction of the defendants' arguments. We do not address other arguments either because they were not preserved, were not sufficiently developed for appellate review, were not raised in the defendants' notice of appeal, or were raised in the notice of appeal but not briefed.

I. The Defendants' Challenges to the Jury Verdicts

A. Tortious Interference with Customer Contracts

1. PNE

After trial, the defendants moved for judgment notwithstanding the verdict (JNOV) as to the plaintiffs' tortious interference with certain of PNE's customer contracts on the ground that the plaintiffs had failed to prove that those contracts remained valid after February 2013. According to the defendants, in February 2013, PNE "failed financially because it was unable to maintain its required financial sureties with ISO [New England]," which the defendants assert, manages the "wholesale power transmission market, sometimes referred to as 'the grid.'" The defendants contend that, as a result, ISO New England "suspended PNE's participation in the power market and directed the host utility," Public Service of New Hampshire (PSNH), "to assume

3

responsibility" for the electricity used by PNE's customers by February 20, 2013. The defendants state that, on February 20, "all of PNE's customers were transferred to PSNH for their electricity needs, and PNE stopped buying electricity and re-selling the electricity to its customers." The defendants concede that "PNE was released from its suspension[ ] . . . in late March 2013," but contend that PNE "was not able to immediately recover financially and was not back up and running until June." The defendants argued that they were entitled to JNOV with regard to PNE's contracts with the customers that transferred to PSNH because the plaintiffs failed to prove that PNE maintained contracts with those customers after it was suspended.

The trial court denied the defendants' motion, finding that "there was sufficient evidence for the jury to find that the [challenged] contracts continued even after the customers were transferred to PSNH." For instance, the trial court noted, the employee "testified that, on behalf of [the] [p]laintiffs, he would maintain the relationships with customers even after they were transferred to a utility during periods of market volatility." The trial court stated that the employee also testified that, as part of the service that the plaintiffs provided to customers, the employee "would keep the customers abreast of market conditions and forecasts, so that when rates went down customers could return to [the] [p]laintiffs for their service." According to the employee, "this service was part of the contractual relationship." The trial court also determined that there was sufficient evidence from which the jury could have found that the plaintiffs and their customers "contemplated this sort of short-term transfer." The defendants argue that the trial court erred in so ruling.

A motion for JNOV relates to the sufficiency of the evidence and presents a question of law. Murray v. McNamara, 167 N.H. 474, 478 (2015). A party is entitled to JNOV only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the non-moving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. Id. at 478-79. The court cannot weigh the evidence or inquire into the credibility of the witnesses, and if the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied. Id. at 479.

Although in the past we have stated that we will not overturn the trial court's decision absent an unsustainable exercise of discretion, id., in fact, because a motion for JNOV presents a question of law, our review is de novo, see Ellis v. Candia Trailers & Snow Equip., 164 N.H. 457, 463 (2012) (explaining that "[w]e review questions of law de novo").

Based upon our review of the record, we cannot conclude that the trial court erred by denying the defendants' motion for JNOV. As the trial court aptly observed, the evidence adduced at trial was conflicting, and while the defendants' evidence "may have cast doubt" on the plaintiffs' evidence, it "did

4

not prevent a reasonable jury" from finding that "the contractual relationships continued after the suspension."

### 2. Resident Power

The defendants argue that they were entitled to JNOV with regard to certain of Resident Power's customers because, although Resident Power was not suspended, it "suffered significant reputational damage because it was so closely linked to PNE, which was suspended." Moreover, the defendants assert, Resident Power's contracts with certain customers provided for automatic termination of the contract if a party ceases conducting business "in the ordinary sense," and, following PNE's suspension, Resident Power ceased conducting business "in the ordinary sense." According to the defendants, "Resident Power effectively ceas[ed] to conduct business in the ordinary sense" because it "could not transfer the customers placed with PNE to a new supplier without the customers' permission or without facing slamming allegations."

In denying the defendants' motion for JNOV, the trial court determined that the phrase "to conduct business in the ordinary sense" is ambiguous "as it could be reasonably understood to mean either a significant disruption in business, however fleeting in length, or the permanent shutdown of operations." (Quotation omitted.) The trial court concluded that, given the provision's ambiguity, "the jury was entitled to decide [its] meaning and application."

Because the defendants do not argue otherwise, we assume without deciding that the meaning of the provision was a fact question for the jury to decide. Viewing the evidence in the light most favorable to the plaintiffs, we cannot say that the sole reasonable inference is that Resident Power ceased to "conduct business in the ordinary sense" when PNE was suspended. See Murray, 167 N.H. at 478-79. Accordingly, we conclude that the trial court's denial of the defendants' motion for JNOV on this ground was not erroneous.

### B. Tortious Interference with the Employee's Contract

The defendants assert that the trial court erred when it declined their request for "an instruction that required the jury to find" that the non-compete provision in the employee's contract with the plaintiffs "was backed by consideration." The defendants argue that, without such an instruction, "[t]he jury was conclusively required to presume the validity of [the employee's] non-compete agreement." They further argue that, in fact, the non-compete provision lacked consideration and, therefore, that "the trial court's refusal to instruct the jury as requested was error because the jury could have been misled into basing its verdict on a misperception of the law, that is, that there can be interference with an invalid contract." (Quotations omitted.)

5

The purpose of jury instructions is to identify issues of material fact, and to explain to the jury, in clear and intelligible language, the proper standards of law by which it is to resolve them. N.H. Ball Bearings v. Jackson, 158 N.H. 421, 433-34 (2009). The scope and wording of jury instructions, however, are within the sound discretion of the trial judge and are evaluated as a reasonable juror would have interpreted them. Id. at 434. A trial court need not use the exact words of any party's jury instruction request. Peterson v. Gray, 137 N.H. 374, 377 (1993). A jury charge is sufficient as a matter of law if it fairly presents the case to the jury such that no injustice is done to the legal rights of the parties. Jackson, 158 N.H. at 434. In a civil case, we review jury instructions in context. Id. We will reverse if the charge, taken in its entirety, fails to explain adequately the law applicable to the case in such a way that the jury could have been misled. Id.

We disagree with the defendants' assertion that the jury instructions did not require the jury to find that the employee's non-compete agreement was supported by consideration. Viewing the instructions in context and as a whole, we conclude that they adequately explained to the jury that for the jury to find that the employee's non-compete agreement existed, the jury had to find that it was supported by consideration.

When the court instructed the jury on the plaintiffs' tortious interference with customer contracts claim, it told the jury:

> Onto the second claim, intentional interference with customer contract. Plaintiffs alleged the Defendants knew that the Plaintiffs entered into contractual agreements with certain customers and intentionally and improperly induced these customers to breach those existing contracts and enter into agreements with the Defendants.
>
> In order to prevail on this claim the Plaintiffs must prove by a balance of the probabilities as I've explained that term too [sic] in these four elements; one, one or more of the Plaintiffs had a contract with a customer; two, the Defendants knew of that contractual relationship; three, the Defendants intentionally, improperly, wrongfully induced the third party to breach its agreement with the Plaintiffs[;] and four, the Plaintiffs were damaged by the interference.
>
> Because the Plaintiffs allege intentional interference of customer contracts as to all of the Defendants, they must establish these four elements as to each and every Defendant. They must also show which of the Plaintiffs was harmed by the conduct of any Defendant. I'll now explain these elements to you.

6

The first element that the Plaintiffs must prove is that they had an existing contract. To prove the existence of a contract the Plaintiffs must prove the following four elements of a binding contract[:] one, there was an offer that the Plaintiffs were legally entitled to make; two, there was an acceptance of the offer; three, it was accurate [sic] consideration[;] and four, there was a meeting of the minds as to the essential terms of the contract.

The Plaintiffs are not required to prove that the contract is enforceable. In other words, a voidable contract is still a contract on which Plaintiffs may base a claim. In evaluating whether the Plaintiffs had a contractual relationship with certain customers, you must determine that the contracts existed at the time the Defendants elected to interfere.

(Emphases added.)

When the court instructed the jury as to the claim for tortious interference with the employee's contract, the court specifically referenced its prior instruction:

I'll now move onto the third claim, intentional interference with the [employee's] contracts.

Plaintiffs allege that one or more of the Defendants knew that one or more of the Plaintiffs entered into . . . contractual agreements with [the employee], which required [him] to preserve the confidentiality of Plaintiffs['] confidential proprietary information. In order to prevail in this claim, the Plaintiffs must prove by a balance of the probability that one[,] one or more of the Plaintiffs had a contract with [the employee]; two, the Defendants knew of that contractual relationship; three, the Defendants intentionally, improperly, wrongfully and in bad faith induced [the employee] to breach his agreement with the Plaintiffs[;] and four, the Plaintiffs were damaged by the interference.

As [with] Claim 2, you must determine whether any of the Plaintiffs entered into a valid or voidable contract with [the employee]. Defendants argue that no contract was in force at the time they were alleged to have engaged [the employee], because the Plaintiffs['] contract with [the employee] terminated when one of the parties ceases to conduct business in the ordinary sense.

You may consider whether the Plaintiffs['] suspension from operations sufficed to trigger this provision and terminate the agreement. You must then determine based on the law I previously

7

described to you whether any of the Defendants intentionally and improperly induced [the employee] to breach his contract with the Plaintiffs.

And as with Claim 2, the Plaintiffs must prove that they suffered damages and that the Defendants['] interference was a substantial factor in bringing about their harm.

(Emphasis added.)  The court also instructed the jury that, as with the tortious interference with customer contracts claim, for the tortious interference with the employee's contract claim, "[t]he Plaintiffs are not required to prove that the contract is enforceable; in other words, a voidable contract is still a contract on which Plaintiffs may base a claim."  In its written instructions, the court explained that, to prove the existence of a contract, the plaintiffs had to establish that the contract was supported by "adequate consideration."

Reading the jury instructions as a whole, we conclude that the trial court correctly instructed the jury that "[t]o prove the existence of a contract," including the employee's contract, the plaintiffs had to prove that the contract was supported by adequate consideration.

To the extent that the defendants argue that they were entitled to JNOV because the plaintiffs failed to prove that the non-compete agreement was supported by consideration, we disagree.  The trial court determined that the plaintiffs' continuation of the employee's at-will employment constituted consideration for the covenant not to compete.  See Smith, Batchelder & Rugg v. Foster, 119 N.H. 679, 683 (1979).  The trial court also found that the agreement was supported by consideration because it allowed the employee to use company e-mail and to receive commissions.  Although the defendants asserted that the continuation of the relationship did not furnish consideration because the employee obtained no additional benefit by continuing the relationship, the trial court disagreed.  The court observed that the defendants' argument was "predicated on their assertion that [the employee] had already earned the commissions on the customers he signed."

The trial court determined that, in fact, the original agreement between the plaintiffs and the employee was unclear as to when the employee earned commissions.  In light of the ambiguity in the original agreement and "the uncertain business environment in February 2013," the court determined that the employee and the plaintiffs could have had a good faith dispute over his entitlement to commissions.  The non-compete agreement, the court ruled, resolved that good faith dispute, and the resolution of such a dispute furnished adequate consideration.

We find no error in the trial court's analysis.  See Foster, 119 N.H. at 683 (explaining that "[c]ontinued employment after signing an employment contract

constitutes consideration for a covenant not to compete therein").  On appeal, the defendants do not address the trial court's analysis, and, therefore, they have failed to persuade us that the trial court erred when it denied their motion for JNOV as to whether the employee's non-compete agreement was supported by consideration.

II.  The Defendants' Challenges to the Jury's Damages Award

A.  Duplicate Recovery

The defendants contend that the trial court erred by failing to instruct the jury that it could not award damages to the plaintiffs for both tortious interference with customer contracts and tortious interference with economic relations because those claims were alternative theories of recovery.  The defendants concede that they did not request that instruction, but assert that because "the error did not arise until the trial court accepted . . . verdicts" on both claims, their motion for JNOV properly preserved their argument for our review.

"A contemporaneous objection is necessary to preserve a jury instruction issue for appellate review."  Clark & Lavey Benefits Solutions v. Educ. Dev. Ctr., 157 N.H. 220, 223 (2008) (quotation omitted).  Absent a contemporaneous objection, the trial court is not afforded the opportunity to correct, in a timely fashion, an error it may have made.  Id.  "This long-standing requirement is grounded in common sense and judicial economy, and applies equally to civil and criminal matters."  Id. (quotation omitted).  Generally speaking, "[a]ll objections to a jury charge are waived unless taken on the record before the jury retires."  Snelling v. City of Claremont, 155 N.H. 674, 688 (2007); see Transmedia Restaurant Co. v. Devereaux, 149 N.H. 454, 458-59 (2003) (holding that challenge to trial court's failure to provide a jury instruction was not preserved by post-trial motions).  Thus, the defendants' motion for JNOV failed to preserve their jury instruction argument.

Alternatively, the defendants assert their jury instruction argument under our plain error rule.  See Sup. Ct. R. 16-A.  The plain error rule allows us to consider errors not brought to the attention of the trial court.  Clark & Lavey Benefits Solutions, 157 N.H. at 225.  However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result.  Id.  "For us to find error under the rule:  (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings."  Id. (quotation omitted).  Because the plaintiffs do not argue otherwise, we assume without deciding that plain error review of the trial court's jury instruction is available.  See id.

We conclude that the trial court did not err.  Under New Hampshire law, "a plaintiff cannot claim multiple recoveries for the same loss even though different theories of liability are alleged."  Snelling, 155 N.H. at 690.  When a plaintiff's theories of recovery "arise from the same set of operative facts," the plaintiff "is entitled to only a single recovery."  Id. at 691.

In the instant case, the trial court instructed the jury that the plaintiffs could not "recover more than once for the same loss even if they allege different theories of legal fault on the part of the [d]efendants."  The trial court further instructed the jury that "if the [p]laintiffs' claims arise out of a common core of facts[,] only a single recovery will be made, even if you find for the [p]laintiffs on more than one of their claims."  Viewing the jury instructions as a whole, we cannot conclude that it fails to explain adequately New Hampshire's law about double recovery.  See Jackson, 158 N.H. at 434.  Thus, we hold that the defendants cannot prevail on their jury instruction claim under our plain error rule.

To the extent that the defendants argue that the jury, in fact, awarded the plaintiffs a double recovery by awarding damages on both the tortious interference with customer contracts claim and the tortious interference with economic relations claim, we disagree.  We must presume that the jury followed the trial court's instructions, which precluded the jury from allowing the plaintiffs to "recover more than once for the same loss."  See Nilsson v. Bierman, 150 N.H. 393, 403 (2003).

B.  Damages for Tortious Interference with Customer Contracts and Tortious Interference with Economic Relations

The defendants moved to set aside the jury's award of damages on the tortious interference with customer contracts and tortious interference with economic relations claims.  The trial court denied the motion, ruling that the jury's award was neither conclusively against the weight of the evidence nor wholly unreasonable.  The court observed that the plaintiffs proved their damages largely through the testimony of Bart Fromuth, the son of the owner of the Freedom Companies.  Fromuth estimated damages based upon each customer's average electricity usage, the plaintiffs' commission or marginal profit per kilowatt hour, and the average retention length for the customers.  From those variables, Fromuth calculated what each lost customer would have spent on electricity, and, consequently, what the plaintiffs would have earned, over the duration of the contract or economic relationship.

The trial court acknowledged that, as the defendants asserted, Fromuth's calculations were based upon the following assumptions:  Fromuth assumed "that the customer's usage going forward would have been consistent with its average usage; that each lost customer would have stayed with [the] [p]laintiffs as long as the estimated average; and that market conditions like those in

10

February 2013 would not have occurred and caused [the] [p]laintiffs to lose customers."

The trial court determined that "the jury could credit Fromuth's testimony regarding damages despite the assumptions underlying his calculations" because his assumptions were "reasonable." The court explained:

Where variables could be determined by reference to the particular customer's information, they were[,] . . . and where they could not, Fromuth used reasonable assumptions based on historical data [the] [p]laintiffs possessed. Since the question of how long lost customers would have stayed if not for [the] [d]efendants' interference was hypothetical, such assumptions were necessary in order to come to a reasonable assessment of damages.

The trial court observed that, as the defendants contended, Fromuth's methodology did not account for the reputational harm that the plaintiffs suffered when PNE was suspended or the possibility that customers would have terminated their contracts or economic relationships with the plaintiffs prematurely. Those considerations, the court ruled, "could bear on the jury's assessment of Fromuth's testimony, but . . . are not so weighty that they should have compelled the jury to reject [it]."

The court also declined to find the award "unreasonable simply because [it] did not exactly correspond with [the] [p]laintiffs' requested damages." The trial court explained: "The jury's task was not to blindly accept or reject [the] [p]laintiffs' request." Rather, it was "to determine based on the evidence presented to [it] the damages to which [the] [p]laintiffs were entitled."

"New Hampshire law does not require that damages be calculated with mathematical certainty, and the method used to compute them need not be more than an approximation." Blouin v. Sanborn, 155 N.H. 704, 707 (2007). Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively against the weight of the evidence. Id. The court may also order remittitur if the verdict is "manifestly exorbitant." Id. (quotation omitted). The amount of a verdict is conclusively against the weight of the evidence only if no reasonable jury could have reached it. Id. Once the trial court has reviewed the amount of the verdict under this standard, we will not disturb its finding unless no reasonable person could have made it. Id. Our task upon review is not to attempt to ascertain the one and only correct verdict. Id.

On appeal, the defendants repeat the arguments that they made in the trial court. We do not find those arguments sufficient grounds for us to disturb the trial court's decision. See id.

11

C.  Attorney's Fees as Damages

Before the trial court instructed the jury, the parties discussed whether the plaintiffs could recover as damages the attorney's fees they incurred when they sued the employee for his wrongful conduct.  The defendants contended that such fees were not recoverable because there was insufficient evidence that they were the "natural necessary consequence" of the defendants' allegedly tortious conduct.  See Symetra Life Ins. Co. v. Rapid Settlements, Ltd., 775 F.3d 242, 251 (5th Cir. 2014) (explaining that, under Texas law, attorney's fees incurred in prior litigation may be recovered as damages in a later suit based upon tortious interference with contract "where the natural and proximate . . . consequences of prior wrongful acts had been to involve a plaintiff in litigation" (quotation and ellipsis omitted)); Hubbard v. Gould, 74 N.H. 25, 28 (1906) ("If it is established that the defendants and not the plaintiff are responsible for the injury to [the third party's] horse, the expenses reasonably incurred in good faith by [the plaintiff] in litigating the questions raised by [the third party's] claim are part of his damages . . . .").

The trial court disagreed and instructed the jury as follows:

> Plaintiffs request damages for the attorney['s] fees which they incurred in their prior litigation against [the employee].  In order for Plaintiffs to be entitled to such an award, they must prove that[:] one, they incurred reasonable attorney['s] fees in the prosecution of the action against [the employee]; two, the litigation must have been against [the employee] and not against any of the Defendants in this case[;] and three, they became involved in such litigation because of some tort[i]ous act of the Defendants.
>
> Therefore, if you find the Plaintiffs were forced to institute the litigation against [the employee] because of the Defendants['] tort[i]ous conduct you may award Plaintiffs the fees incurred in that prior litigation.
>
> If you find the Defendants committed no tort[i]ous conduct or the Defendants['] tort[i]ous conduct did not force Plaintiffs to institute the litigation against [the employee], you should not award Plaintiffs their requested fees.

Consistent with that instruction, the jury's damage award included $93,000 in attorney's fees the plaintiffs incurred in their prior lawsuit against the employee.

Thereafter, the defendants moved for JNOV arguing, first, that the evidence failed to establish that the litigation against the employee was the "natural consequence" of the defendants' allegedly tortious conduct.  The trial

court ruled that "there was sufficient evidence to show that [the] [d]efendants' misconduct forced [the] [p]laintiffs to institute the suit against [the employee]." Specifically, the trial court observed that the plaintiffs presented evidence that they sued the employee so as to enforce his contractual promises. The trial court also observed that the plaintiffs presented evidence that the defendants caused the employee to breach his agreements with the plaintiffs: the employee testified that the owners of Provider Power Companies encouraged him to take the plaintiffs' customer information and sales leads to use for the defendants' benefit. Although the trial court acknowledged that, as the defendants contended, the employee "was the primary perpetrator of the torts," the court ruled that this fact "did not prevent the jury from assessing fees against [the] [d]efendants" given that the jury found that they conspired with the employee "to engage in the tortious misconduct."

In their motion for JNOV, the defendants also argued, for the first time, that the plaintiffs failed to prove that their attorney's fees were reasonable. The trial court ruled that the argument was waived because the defendants did not raise it before the jury deliberated. The trial court observed that the defendants did not include this argument in their motions for a directed verdict or in their objections to the jury instructions.

On appeal, the defendants reiterate their trial court assertion that the plaintiffs are not entitled to recover the fees as damages in the instant action because the evidence failed to demonstrate that the lawsuit against the employee "was . . . the natural consequence of [the] [d]efendants' purportedly tortious conduct." Viewing the evidence, including that upon which the trial court relied, in the light most favorable to the plaintiffs, we cannot say that the sole reasonable inference is that the lawsuit was not the natural consequence of the defendants' purportedly tortious conduct. See Murray, 167 N.H. at 478-79. Accordingly, we conclude that the trial court's denial of the defendants' motion for JNOV on this ground was not erroneous.

The defendants next assert that the trial court erred when it instructed the jury that it could include the previously incurred attorney's fees in the damages award. The defendants contend that the trial court's instruction is error because, according to the defendants, New Hampshire has not adopted the "tort of another" doctrine as an exception to the general rule that each party is responsible for his or her own attorney's fees. See Shelton v. Tamposi, 164 N.H. 490, 501 (2013). Under that doctrine, "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for . . . attorney fees . . . thereby suffered or incurred in the earlier action." Restatement (Second) of Torts § 914(2), at 492 (1979).

However, as the plaintiffs correctly observe, the defendants have not preserved this argument for our review. The record demonstrates that the

13

defendants did not argue before the trial court that the court's proposed jury instruction was inconsistent with New Hampshire law. Thus, we decline to consider that argument on appeal.

The defendants next contend that the trial court committed plain error when it concluded that they waived their argument regarding the plaintiffs' failure to prove that the attorney's fees were reasonable. See Sup. Ct. R. 16-A. We disagree that the trial court's ruling constituted error.

"The well-established rule is that an objection to the sufficiency of evidence is waived unless taken at a time when there may still be an opportunity to supply the deficiency," i.e., before the court instructs the jury. Carlisle v. Frisbie Mem. Hosp., 152 N.H. 762, 767 (2005) (quotation omitted). Here, as the trial court aptly noted, the defendants did not argue, prior to the court instructing the jury, that the plaintiffs' proof of reasonableness was insufficient. Thus, the trial court's determination that the defendants waived that argument is consistent with New Hampshire law and does not constitute error.

III. Attorney's Fees Under the New Hampshire Uniform Trade Secrets Act

The defendants contend that the trial court erred when it awarded the plaintiffs' prevailing party attorney's fees under the NHUTSA. A prevailing party may be awarded attorney's fees when recovery of fees is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees. In the Matter of Mason & Mason, 164 N.H. 391, 398 (2012). We will not overturn the trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion. Id. at 399. We give substantial deference to the trial court's decision on attorney's fees. Id.

We review the trial court's interpretation of the NHUTSA de novo. See Petition of State Employees' Assoc., 161 N.H. 476, 478 (2011). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret a statute in the context of the statutory scheme and not in isolation. Id. at 479. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. Id.

To interpret the NHUTSA, we also rely upon the official comments to the Uniform Trade Secrets Act. See In the Matter of Ball & Ball, 168 N.H. 133, 137 (2015) (discussing interpretation of the Uniform Interstate Family Support Act). When interpreting a uniform law, such as the NHUTSA, "the intention of the drafters of a uniform act becomes the legislative intent upon enactment." Id.

(quotation omitted). In addition, we consider the interpretation of the Uniform Trade Secrets Act by other jurisdictions. See id. "The opinions from courts in other jurisdictions are relevant because uniform laws should be interpreted to effect their general purpose to make uniform the laws of those states that enact them." Id. (quotation omitted); see RSA 350-B:8 (stating that the NHUTSA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject [of trade secrets] among states enacting it").

RSA 350-B:4, III provides, "The court may award reasonable attorney's fees to the prevailing party when . . . [w]illful and malicious misappropriation exists." The pertinent official comment to the Uniform Trade Secrets Act explains that this provision "allows a court to award reasonable attorney fees to a prevailing party . . . as a deterrent to . . . willful and malicious misappropriation." Unif. Trade Secrets Act § 4 Comment (amended 1985). The comment states that, when willful and malicious appropriation is at issue, "the court should take into consideration the extent to which a complainant will recover exemplary damages in determining whether additional attorney's fees should be awarded" and the court should rely upon patent law "to determine whether attorney's fees should be awarded even if there is a jury." Id.; see, e.g., Clearone Communications, Inc. v. Biamp Systems, 653 F.3d 1163, 1186 (10th Cir. 2011) (concluding that interpretation of patent law fee-shifting provision "provides persuasive guidance" in interpreting the attorney's fee provision of Utah's Uniform Trade Secrets Act).

The Patent Act authorizes an award of attorney's fees to the prevailing party "in exceptional cases." 35 U.S.C. § 285 (2012); see Octane Fitness v. ICON Health & Fitness, 134 S. Ct. 1749, 1752 (2014). A case is considered to be "exceptional" when it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, 134 S. Ct. at 1756. To determine whether a case is "exceptional," the court applies a totality of the circumstances test. Id. One of the factors that may bear upon this determination is "the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 1756 & n.6 (quotation omitted).

Here, the trial court used a totality of the circumstances test to determine whether to award attorney's fees to the plaintiffs under the NHUTSA. The court considered the fact that the jury did not award the plaintiffs damages for their misappropriation claim, but concluded that the extent of the defendants' malice and willfulness outweighed that fact. The court also observed that awarding fees in this case furthered the goals of the NHUTSA to maintain standards of commercial ethics and deter intentional misappropriation of trade secrets. As the court explained:

The jury could have reasonably found that [the] [d]efendants exploited [the employee's] position to siphon confidential customer information and sales leads in order to secure a competitive advantage in the same market in which [the] [p]laintiffs operated. This is not a case where the misappropriated information was put to some use that could only indirectly harm [the] [p]laintiffs; it was wielded in the exact manner [that the] UTSA was enacted to discourage.

Upon consideration of the record and the trial court's order, we conclude that the trial court did not unsustainably exercise its discretion when it awarded the plaintiffs their attorney's fees under the NHUTSA.

In arguing for a contrary result, the defendants invite us, in construing the NHUTSA, to apply case law developed under 42 U.S.C. § 1988 (2012) (Section 1988). See Farrar v. Hobby, 506 U.S. 103, 114, 115 (1992) (concluding that, in a Section 1988 case, there are "some circumstances" when a prevailing party's victory for purposes of Section 1988 is so "technical" that the plaintiff should not recover any attorney's fees (quotation omitted)). We decline their invitation.

The defendants next assert that, even if the plaintiffs are entitled to fees under the NHUTSA, the trial court was required "to apportion the attorney time consumed in preparing and proving [the] misappropriation [claim]" from that consumed preparing and proving the plaintiffs' other claims. The defendants contend that "[a]lthough a number of fundamental facts were essential" to all of the plaintiffs' claims, "that does not mean they all required the same research, discovery, proof, or legal expertise." (Quotation omitted.) The defendants argue that the plaintiffs' misappropriation of trade secrets claim is analytically severable from the plaintiffs' other claims, observing, for instance, that "the law regarding misappropriation of trade secrets and tortious interference is not the same."

Under New Hampshire law, when a party prevails on some claims and not others, and the successful and unsuccessful claims are analytically severable, any fee award should be reduced to exclude time spent on unsuccessful claims. Appeal of the Local Gov't Ctr., 165 N.H. 790, 814 (2014). The defendants imply that a different standard should apply in this case because it involves a claim for which attorney's fees are statutorily authorized (misappropriation of trade secrets) and claims for which there is no such statutory authorization. They cite Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006), for the proposition that "[i]ntertwined facts[,] alone, do not make unrecoverable fees recoverable." Under Texas law, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." Chapa, 212 S.W.3d at 313. However, "when discrete legal services advance both a

16

recoverable and unrecoverable claim[,] . . . they are so intertwined that they need not be segregated." Id. at 313-14. The record does not demonstrate that the defendants argued before the trial court that the trial court should adopt the Texas standard. Therefore, we conclude that their argument is not preserved for our review, and we apply our traditional standard to this case.

Under New Hampshire law, claims are "analytically severable" when they seek different relief, see Funtown USA, Inc. v. Town of Conway, 129 N.H. 352, 356 (1987); claims are not "analytically severable" when they constitute alternative theories of recovery and the evidence necessary to prove liability under one theory is relevant to prove liability under the other theory, see LaMontagne Builders v. Brooks, 154 N.H. 252, 261 (2006).

Here, the court determined that all of the plaintiffs' "claims share a common core of facts that make severance impracticable and unreasonable." The court determined that "[t]he facts relevant to each claim overlap significantly, and the investigation and work performed to prosecute one claim necessarily related to the others." Because there is record support for those determinations, we uphold them, and conclude, therefore, that the trial court did not unsustainably exercise its discretion when it declined "to apportion the attorney time consumed in preparing and proving [the] misappropriation" claim from that consumed preparing and proving the plaintiffs' other claims.

Affirmed.

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.

17